Pol HAUSPIE and Nico Willaert,
Defendants Below,
Appellants,

v.

STONINGTON PARTNERS, INC., Stonington Appreciation 1994 Fund, L.P., and Stonington Holdings, L.L.C., Plaintiffs Below, Appellees.

No. 527, 2003.

Supreme Court of Delaware.

Submitted: Dec. 5, 2007.
Decided: March 7, 2008.

Donald H. Chase, Esquire (argued) of Morrison Cohen, LLP, New York City; Neal J. Levitsky, Esquire of Fox Rothschild, LLP, Wilmington, DE, for Appellant Nico Willaert.

Max W. Berger, Esquire, Steven B. Singer, Esquire and Avi Josefson, Esquire (argued) of Bernstein Litowitz Berger & Grossmann, LLP, New York City; David C. McBride, Esquire, John W. Shaw, Esquire and Kristen Salvatore DePalma, Esquire of Young Conway Stargatt & Taylor, LLP, Wilmington, DE, for Appellees.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

BERGER, Justice:

In this appeal we consider whether a default judgment in excess of $750 million must be vacated. Appellant raised numerous arguments in the Court of Chancery, and again on appeal, such as defects in the service of process, the alleged unenforceability of any judgment, and excusable neglect. The trial court correctly rejected those arguments. We conclude, however, that the complaint on which the default judgment was predicated fails to allege fraud with particularity, as required by Court of Chancery Rule 9(b). Accordingly, we must vacate the default judgment and allow the matter to proceed in the trial court.

## FACTS AND PROCEDURAL HISTORY

In May 2001, Stonington Partners, Inc., Stonington Appreciation 1994 Fund, L.P. and Stonington Holdings, L.L.C. (collectively "Stonington") exchanged their 96% interest in Dictaphone Corporation ("Dictaphone") for $490 million of Lernout & Hauspie Speech Products, N.V. ("L & H") stock. L & H obtained the remaining 4% of Dictaphone's stock through the cash-out merger of Dictaphone into a wholly-owned L & H subsidiary.

Six months after the exchange, L & H announced that it had restated its financial statements for the period from January 1998 through June 2000 because of "accounting irregularities."[1] Shortly after the restatement, which eliminated 70% of the company's publicly reported revenues, L & H filed for bankruptcy both in the United States and in Belgium. The net result was that the L & H stock Stonington received in the stock-for-stock exchange was rendered worthless.

1. The fraud underlying these irregularities is discussed in detail in *In re Lernout & Hauspie* *Securities Litigation,* 208 F.Supp.2d 74 (D.Mass.2002).

Stonington filed this action in the Court of Chancery on November 27, 2000, against L & H and its executives: Jozef Lernout, Pol Hauspie, Gaston Bastiaens and Nico Willaert. Stonington claimed that defendants were liable for the damages it suffered when L & H went bankrupt because it would not have entered into the transaction if L & H had not misled Stonington as to its true financial position. Stonington sought rescission of the stock-for-stock exchange or, in the alternative, damages measured by the market value of the L & H stock it was entitled to receive under the agreement.

Two days after Stonington began this action, L & H filed for bankruptcy, thereby staying the proceedings against the company. Lernout, Hauspie and Willaert were served with process on December 6, 2000, but they failed to appear or otherwise respond to the complaint. Bastiaens entered an appearance and then removed the action to federal court. The other three individual defendants never appeared in federal court, and the federal court entered defaults against them in April 2001. In September 2001, this case was remanded to the Court of Chancery because Bastiaens failed to comply with the requirements of 28 U.S.C. § 1446 governing removal of actions.

Stonington resumed litigation in the Court of Chancery by moving for default judgments against Willaert, Hauspie and Lernout. Willaert finally entered an appearance on January 14, 2002, and, at the same time, filed his opposition to the motion for default judgment. The Court of Chancery granted the motion and awarded damages, together with pre- and post-judgment interest.[2] After Willaert perfected his appeal, the parties stipulated to a stay pending settlement discussions. Briefing and argument on this appeal resumed in August 2007.

## DISCUSSION

██ Willaert failed to respond to Stonington's complaint for more than one year. Thus, Stonington established a basis for the entry of a default judgment.[3] The effect of a default in answering, however, is to deem admitted all the well-pleaded facts in the complaint.[4] A plaintiff is only entitled to a default judgment if those facts, taken together, state a claim upon which relief can be granted.[5]

██ The Stonington complaint purports to allege fraud. To state a claim for fraud a plaintiff must allege:

> 1) a false representation, usually one of fact …; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.[6]

In addition, Court of Chancery Rule 9(b) provides that, "in all averments of fraud

---

**2.** *Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.,* 2002 WL 31439767 (Del.Ch.2002); *Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.,* 2003 WL 21555325 (Del.Ch.2003).

**3.** Ch. Ct. R. 55(b).

**4.** *Thomson v. Wooster,* 114 U.S. 104, 111, 5 S.Ct. 788, 29 L.Ed. 105 (1885); *DIRECTV,*

*Inc. v. Pepe,* 431 F.3d 162, 165 (3rd Cir.2005); *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3rd Cir.1990).

**5.** *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir.1975).

**6.** *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 472 (Del.1992).

... the circumstances constituting fraud must be pled with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred to generally." This pleading standard "serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude."[7]

■ The first issue on appeal is whether the heightened pleading standard of Rule 9(b) applies in the context of default judgments. The trial court determined that the complaint adequately stated a claim under notice pleading standards. It did not reach the particularity pleading standard, finding that Willaert waived any Rule 9(b) argument by his failure to timely respond to the complaint. But all defendants facing a default judgment will have failed to timely respond to the complaint. Thus, the trial court effectively decided that default judgments are not evaluated by reference to any heightened pleading requirements.

■ We reach a different conclusion. "[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover ... Although he may not challenge the sufficiency of the evidence, [the defendant] is entitled to contest the sufficiency of the complaint ...."[8] If a complaint alleges fraud, the sufficiency of that complaint ordinarily would be measured by the heightened pleading standards governing fraud claims. There is no reason why a different standard should apply in the context of default judgments. Indeed, other jurisdictions that have considered this question consistently hold that entry of a default judgment requires strict conformity with all procedural requirements, including the pleading standard for claims of fraud.[9]

The next question is whether Stonington's complaint adequately alleges fraud. The complaint alleges, in some detail, that material misrepresentations as to L & H's financial condition were made to Stonington; that those misrepresentations were intended to, and did, induce Stonington to enter into the stock-for-stock exchange; and that Stonington suffered damages.[10] But, to state a claim for fraud, the complaint also must allege that Willaert knew that the financial representations were false. On this point, the complaint alleges that "L & H and its executives were deliberately hiding the fact that the reported revenue numbers were ... inflated ...;"[11] "L & H executives deliberately misled Stonington ... into believing that L & H was financially sound ...;"[12] and "L & H knew that such statements and omissions

---

7. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del.1993), quoting *U.S. ex rel Joseph v. Cannon*, D.C.Cir., 642 F.2d 1373, 1385 (1981), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982).

8. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200 at 1206.

9. *See, e.g.: In re Kubick*, 171 B.R. 658 (9th Cir.BAP (Alaska) 1994) (holding that a default judgment action was improper where the action could have been dismissed under 12(b)(6) if the party failed to amend its complaint); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388 (C.A.9 (Cal.), 1988) (heightened RICO pleading standard must be met to obtain a default judgment); *In re Bungert*, 315 B.R. 735 (Bkrtcy.E.D.Wis., 2004) (refusing to grant a default judgment of nondischargeability based on fraud where creditor complied with notice pleading, but not strict pleading standard).

10. *See, e.g.:* Appellant's Appendix, A–25–37 (Complaint, ¶¶ 48, 49, 78, 82, 88).

11. Appellant's Appendix, A –22 (Complaint ¶ 38).

12. Appellant's Appendix, A –35 (Complaint ¶ 89).

were false and misleading ...."[13] Notably absent is any allegation that Willaert knew that the financial statements and other revenue numbers were inaccurate.

Stonington argues that, because the complaint alleges that Willaert was a Managing Director, vice chairman, and director of L & H, it is clear that he is one of the "executives" who "deliberately misled" Stonington. It might be reasonable to infer, from Willaert's company positions and from the fact that he is named as a defendant, that he is one of the "executives" being charged with wrongdoing. Likewise, it is fairly inferable that one or more L & H insiders knew that its financial statements were grossly inflated. The complaint describes discrepancies in L & H's stated revenues from Asia, and suggests that a fund founded by Lernout and Hauspie was tied to the start-up Asian companies that supposedly generated the bulk of L & H's revenues. The complaint goes on to allege that, as the financial irregularities started becoming public, first Bastiaens and later Lernout and Hauspie resigned their positions as CEO and Managing Directors, respectively.

Willaert, by contrast, is never mentioned. There is no description of either his general responsibilities at L & H or his actual participation in the transaction at issue. Moreover, L & H had outside auditors as well as an audit committee. As a result, even if we assume that Willaert made representations about the accuracy of the company's financial statements, there is no reason to infer that he knew that those representations were false. In sum, the general allegations that L & H's executives deliberately misled Stonington, without more specificity as to what Willaert did and what he knew, does not satisfy the Rule 9(b) particularity requirement.[14]

As noted at the outset, Willaert raised several additional arguments in support of his contention that the default judgment should be vacated. We affirm the trial court's decisions on those issues on the basis of and for the reasons stated in its opinion.

## CONCLUSION

Based on the foregoing, we AFFIRM in part, REVERSE in part, and REMAND with instructions to grant appellees leave to amend their complaint. Jurisdiction is not retained.

---

**13.** Appellant's Appendix, A –35 (Complaint ¶ 90).

**14.** *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.,* 906 A.2d 168, 207–08 (Del. Ch.2006), *aff'd.* 931 A.2d 438 (Del.2007).