# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FLOWSHARE, LLC, a Delaware limited liability company, and ERIC D. FOGLE

Plaintiffs/Counterclaim Defendants,

v.

GEORESULTS, INC., a Georgia corporation, THOMAS E. SHIELDS and DAWN SHIELDS,

Defendants/Counterclaim Plaintiffs.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N17C-07-227 EMD CCLD

Submitted: April 9, 2018
Decided: July 25, 2018

*Upon Defendant-Counterclaim Plaintiff's Motion to Dismiss Count V of the Counterclaim*
***DENIED***

Stephen B. Brauerman, Esquire, Sara E. Bussiere, Esquire, Bayard, P.A., Wilmington, Delaware, John E. Petite, Esquire, John C. Drake, Esquire, Greensfelder, Hemker and Gale P.C., St. Louis, Missouri, *Attorneys for Plaintiffs and Counterclaim Defendants.*

Jeffrey L. Moyer, Esquire, Travis S. Hunter, Esquire, Richards Layton & Finger, Wilmington, Delaware, Stephen P. Fuller, Esquire, CKR LAW, LLP, Johns Creek, Georgia, *Attorneys for Defendants and Counterclaim Plaintiffs.*

**DAVIS, J.**

## I. INTRODUCTION

This civil action is assigned to the Complex Commercial Litigation Division of the Court. On November 6, 2015, Plaintiff Flowshare, LLC d/b/a ShareTracker ("Flowshare") entered into an Asset Purchase Agreement ("APA") with Defendants GeoResults, Inc. ("GeoResults"), Thomas E. Shields, and Dawn Shields (collectively with Thomas Shields and GeoResults, the

"Defendants").  According to the pleadings filed, Plaintiff Eric D. Fogle, CEO and lead negotiator of Flowshare, repeatedly indicated—prior to execution of the APA—that he would personally pay any shortfall in the purchase price.  Mr. Fogle's promises were memorialized into an agreement (the "Shortfall Agreement") dated three days after the execution of the APA.

Flowshare and Mr. Fogle (collectively, "Plaintiffs") filed suit against Defendants, asserting rights under the APA.  Defendants answered and filed counterclaims.  The Plaintiffs' claims and the Defendants' counterclaims all arise out the APA—performance under the APA or the negotiations surrounding the APA.

Plaintiffs filed a Motion to Dismiss Count V of the Counterclaim (the "Motion").  Defendants filed their Opposition to Counterclaim Defendants' Motion to Dismiss Count V of the Counterclaim (the "Opposition").  Plaintiffs filed their Reply Brief in Support of Their Motion to Dismiss Count V of the Counterclaim (the "Reply").  After a hearing on the Motion, the Opposition and the Reply, the Court took the Motion under advisement.

For the reasons set forth below, the Court **DENIES** the Motion.

## II. RELEVANT FACTS[1]

In November 2015, the parties were in the process of negotiating an asset purchase agreement whereby Flowshare would purchase GeoResults.  On November 6, 2015, Flowshare entered into the APA with GeoResults and the Shieldses.[2]  Through the APA, the Shieldses would sell GeoResults to Flowshare.  Section 11.09 of the APA provides:

> This Agreement (including all Exhibits and the Disclosure Schedules hereto) and all other Transaction Documents contain the entire agreement between the Parties

---

[1] Unless otherwise indicated, the facts provided in this Opinion are the facts alleged in the Answer and Counterclaims filed by Defendants.  For purposes of the Motion, the Court must view the Answer and Counterclaims' alleged facts in a light most favorable to Defendants.  *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[2] Answer, Ex. A.  The Asset Purchase Agreement will be cited as "APA § __."

with respect to the subject matter herein and therein and supersede all prior agreements and understandings, oral or written, with respect to such matters."[3]

Mr. Fogle did not sign the APA in an individual capacity. Mr. Fogle only signed the APA in his capacity as the sole manager of Flowshare.[4]

Mr. Fogle, Flowshare's CEO and lead negotiator, made promises to the Shieldses that he would personally fund additional amounts that Flowshare could not finance under the APA.[5] The Shieldses and Mr. Fogle negotiated the Shortfall Agreement leading up to the execution of the APA.[6] The Shieldses and Mr. Fogle changed language in the Shortfall Agreement and negotiated the amount that Mr. Fogle would cover. Mr. Fogle stated that he had "more than enough money to work with to make you whole."[7] In fact, Mr. Fogle stated that he is "personally on the hook for these obligations, in addition to the companies [he] own[s]."[8]

On November 4, 2015, prior to executing the APA, Mr. Shields sent Mr. Fogle an email indicating that the Shortfall Agreement should post-date the APA.[9] The parties dated the Shortfall Agreement November 9, 2015 and Mr. Shields sent a draft of the Shortfall Agreement to Mr. Fogle for signature.[10]

These assurances were made prior to the closing of the APA. The promises were memorialized into the Shortfall Agreement. The Shortfall Agreement is dated November 9, 2015 and requires: (1) payment for $2,500,000 to employees of GeoResults; and (2) payment to

---

[3] APA § 11.09.
[4] APA at p. 55.
[5] *See, e.g.,* Answer, Ex. B; Answer at ¶ 78 and ¶ 89.
[6] Am. Compl. at ¶¶ 54-57; Answer at ¶¶ 77-78 and ¶ 89.
[7] Answer, Ex. C.
[8] Answer, Ex. F.
[9] Am. Compl., Ex. D ("Donnie has requested that we sign the document again with a date on the document that is after closing has been completed. We have signed and added a date line of 11/09/15 on the first page and resent so you can sign this one again so it is effective after the close officially.").
[10] Am. Compl. at ¶¶ 58-59.

the Shieldses for the difference between $5,500,000 and the final purchase price in the APA and a real estate purchase agreement.[11]

Mr. Fogle signed the Shortfall Agreement in his individual capacity as well as the sole manager of Flowshare.[12]  The Shortfall agreement also states: "This agreement is independent of and in addition to the APA.  The obligations of Purchaser in this agreement are the joint and several obligations of Purchaser and Eric Fogle."[13]

A Telecom Customer was a material customer to the APA based on the revenue GeoResults generated from Telecom Customer.  On November 30, 2015, Telecom Customer notified ShareTracker that it was terminating the contract.

On July 21, 2017, Flowshare initiated this action.  On October 20, 2017, Flowshare filed an amended complaint (the "Complaint") alleging: (1) breach of contract; (2) declaratory judgment; (3) fraud in the inducement; and (4) declaratory judgment with respect to the Shortfall Agreement.  On November 3, 2017, GeoResults filed their answer, which included counterclaims (the "Counterclaims") for: (1) breach of contract with respect to the APA; (2) breach of contract with respect to the Shortfall Agreement; (3) unjust enrichment; (4) promissory estoppel; and (5) fraud in the inducement.

On December 22, 2017, Flowshare filed the Motion.  On January 31, 2017, GeoResults filed the Opposition.  On February 21, 2018, Flowshare filed the Reply.

On April 9, 2018, the Court held a hearing (the "Hearing") on the Motion, Opposition, and Reply.  At the Hearing, Defendants conceded that the fraud claim is pleaded in the alternative to the contractual claim.

---

[11] Am. Compl., Ex. B.
[12] Am. Compl., Ex. B.
[13] Am. Compl., Ex. B.

## III. PARTIES' CONTENTIONS

### A. THE MOTION

In the Motion, Flowshare argues that GeoResults' claim for fraudulent inducement fails. First, Flowshare contends that the APA's integration clause bars any promises of future intent made before the execution of the APA. Second, Flowshare claims that the alleged pre-closing promises are inconsistent with the price term contained in the APA. Finally, Flowshare states that the fraudulent inducement claim is a "bootstrap" claim to the breach of the contract claims.

In the Reply, Flowshare reiterates that the integration clause precludes the fraudulent inducement claim. Flowshare also argues that GeoResults failed to plead the fraudulent inducement with particularity.

### B. THE OPPOSITION

Defendants argue that the APA's integration clause does not preclude the fraudulent inducement claim because the clause does not foreclose causes of action based on fraud. Further, Defendants contend that the fraudulent inducement claim is sufficiently pleaded under Civil Rule 9. Also, Defendants claim that Mr. Fogle's statements that he was currently able to cover the Shortfall are sufficient to establish fraud.

## IV. STANDARD OF REVIEW

### A. 12(B)(6) FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to

5

recover under any reasonably conceivable set of circumstances.[14]  However, the Court must

"ignore conclusory allegations that lack specific supporting factual allegations."[15]

**B.      CIVIL RULE 9(B) PLED WITH PARTICULARITY**

Under Superior Court Civil Rule 9(b), a party must plead fraud and negligence with

particularity.[16]  "The purpose of [Rule 9(b)] is to apprise the adversary of the acts or omissions

by which it is alleged that a duty has been violated."[17]  To plead fraud or negligence with the

particularity required by Rule 9(b), a party must include the "time, place, contents of the alleged

fraud or negligence, as well as the individual accused of committing the fraud" or negligence.[18]

## V. DISCUSSION

Counterclaim Count V is for fraudulent inducement.  To prove fraudulent inducement, a

plaintiff must show:

> (1) a false representation, usually one of fact . . .; (2) the defendant's knowledge or
> belief that the representation was false, or was made with reckless indifference to
> the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the
> plaintiff's action or inaction taken in justifiable reliance upon the representation;
> and (5) damage to the plaintiff as a result of such reliance.[19]

In Delaware, there are three types of fraud: "(1) false statements represented as truth; (2) active

concealment of facts which prevents the other party from discovering them; and (3) silence in the

face of a duty to speak."[20]  "Under Delaware law, to establish a claim of fraud or negligent

---

[14] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[15] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[16] Super. Ct. Civ. R.  9(b).
[17] *Mancino v. Webb*, 274 A.2d 711, 713 (Del. Super. 1971).
[18] *See TrueBlue, Inc., v. Leeds Equity Partners IV, LP*, C.A. No. N14C-12-112 WCC CCLD, 2015 WL 5968726, at *6 (Del. Super. Sept. 25, 2015) (quoting *Universal Capital Mgmt., Inc. v. Micco World, Inc.*, C.A. No. N10C-07-039-RRC, 2012 WL 1413598, at *2 (Del. Super. Feb. 1, 2012)).
[19] *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008) (quoting *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 472 (Del.1992)).
[20] *DRR, L.L.C. v. Sears, Roebuck & Co.*, 949 F. Supp. 1132, 1137 (D. Del. 1996).

misrepresentation, the plaintiff must demonstrate justifiable reliance on false representations made by the defendant."[21]

### A. THE INTEGRATION CLAUSE IS NOT SUFFICIENT TO DISCLAIM THE PRE-CLOSING PROMISES MADE BY MR. FOGLE

Generally, Delaware courts "'disfavor allegations of fraud when the underlying utterances take the form of unfulfilled promises of future performance,'" but "a complaint that alleges facts with sufficient particularity may 'support a reasonable inference that Defendants made promises they had no intention of keeping when they made them.'"[22] Further, "less particularity is required when the facts lie more in the knowledge of the opposing party than of the pleading party."[23]

"The question of whether one's reliance was reasonable generally is a question of fact. . . . The reasonableness of one's reliance on false information depends on all of the circumstances."[24] As such, whether a party's reliance was reasonable is not generally suitable for resolution on a motion to dismiss." However, "Delaware Courts have addressed the reasonableness of a party's reliance when the dispute involved a fully integrated contract."[25]

Generally, "a party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim."[26] However, there is a "need to strike an appropriate balance between

---

[21] *Vichi v. Koninklijke Philips Elecs.*, 85 A.3d 725, 775 (Del. Ch. 2014).

[22] *TrueBlue, Inc., v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *6 (Del. Super. Sept. 25, 2015) (quoting *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *9-10 (Del. Ch. Dec. 23, 2008)).

[23] *TrueBlue,* 2015 WL 5968726, at *6 (quoting *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 146 (Del. Ch. 2003)).

[24] *TrueBlue,* 2015 WL 5968726, at *7 (quoting *Vague v. Bank One Corp.*, 2004 WL 1202043, at *1 (Del. May 20, 2004)).

[25] *TrueBlue,* 2015 WL 5968726, at *7.

[26] *FdG Logistics LLC v. A&R Logistics Hldgs., Inc.*, 131 A.3d 842, 859 (Del. Ch. 2016) (quoting *Abry Partners V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006)).

holding sophisticated parties to the terms of their contracts and simultaneously protecting against the abuses of fraud."[27]

In balancing the public policy against fraud with the ability of sophisticated parties to contract for integration clauses, Delaware courts have

> Consistently [ ] repeated the law's traditional abhorrence of fraud in implementing this reasoning. Because of that policy concern, we have not given effect to so-called merger or integration clauses that do not clearly state that the parties disclaim reliance upon extra-contractual statements. Instead, we have held, as in *Kronenberg,* that murky integration clauses, or standard integration clauses without explicit anti-reliance representations, will not relieve a party of its oral and extra-contractual fraudulent representations. The integration clause must contain "language that ... can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside of the contract's four corners in deciding to sign the contract." This approach achieves a sensible balance between fairness and equity—parties can protect themselves against unfounded fraud claims through explicit anti-reliance language. If parties fail to include unambiguous anti-reliance language, they will not be able to escape responsibility for their own fraudulent representations made outside of the agreement's four corners.[28]

In *Kronenberg v. Katz*, the Chancery Court addressed an integration clause substantially similar to the one in the APA.[29] The Chancery Court noted that integration clauses, like the one contained in Section 11.09 of the APA, do not limit or operate as a bar to fraud claims.[30] Instead, these types of clauses limit the scope of the parties' contractual obligations to those set forth in the written agreement.[31]

Similarly, in this case the APA did not contain an anti-reliance clause that explicitly stated that the parties disclaimed reliance upon extra-contractual statements. The integration clause in the APA closely resembles the clause in the *Kronenberg* case. The APA states "[t]his

---

[27] *Id.*
[28] *Abry*, 891 A.2d at 1058-59 (quoting *Kronenberg v. Katz*, 872 A.2d 568, 592–93 (Del. Ch. 2004)).
[29] *Kronenberg*, 872 A.2d at 587-594.
[30] *Id.* at 592.
[31] *Id.*

Agreement (including all Exhibits and the Disclosure Schedules hereto) and all other Transaction Documents contain the entire agreement between the Parties with respect to the subject matter herein and therein and supersede all prior agreements and understandings, oral or written, with respect to such matters."[32] As such, *Kronenberg* is strong authority under the unique facts of this case—where purported misrepresentations and the Shortfall Agreement were negotiated before the APA, but purposely post-dated to become effective after the APA.

Here, the parties were in negotiations of the APA. Two days before closing, the parties agreed to post-date the Shortfall Agreement after the APA. Therefore, the parties negotiated, made representations and appear to have reached terms on the Shortfall Agreement prior to the execution of the APA. Defendants allege that the statements made in the negotiations were false statements represented as truth and that these misrepresentations were detrimentally relied upon by Defendants. Section 11.09 of the APA, as drafted, does not act as a bar to Count V of the Counterclaims.

**B.     THE FRAUDULENT INDUCEMENT COUNTERCLAIM IS A BOOTSTRAP OF THE BREACH OF CONTRACT CLAIM RELATING TO THE SHORTFALL AGREEMENT; HOWEVER, DEFENDANTS PLEADED COUNTERCLAIM IN THE ALTERNATIVE SO THE COURT WILL ALLOW IT TO PROCEED AT THIS STAGE IN THE CIVIL ACTION.**

Delaware Superior Court Rule 8(e)(2) allows a plaintiff to "set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. . . . The party may also state as many separate claims or defenses as the party has regardless of consistency. All statements shall be made subject to the obligations set forth in Rule 11."

---

[32] APA § 11.09.

"A fraud claim can be based on representations found in a contract, however, 'where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort.'"[33]  A plaintiff "cannot bootstrap" a claim for a breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations" or "simply by adding the term fraudulently induced to a complaint."[34]  Essentially, a fraud claim alleged contemporaneously with a breach of contract claim may survive, so long as the claim is based on conduct that is separate and distinct from the conduct constituting breach."[35]  Allegations that are focused on inducement to contract are 'separate and distinct' conduct."[36]

Here, the fraudulent inducement claim is separate and distinct from the breach of the APA claim.  However, the fraudulent inducement claim is completely subsumed within the breach of the Shortfall Agreement.  GeoResults argues that Mr. Fogle made promises that he would personally pay any deficit based on the APA.  Mr. Fogle made the promises prior to the execution of the APA.  Defendants claim that they relied upon Mr. Fogle's statements when entering into the APA.  Further, Mr. Fogle's written and oral promises leading up to the execution of the APA were memorialized into the Shortfall Agreement.  The parties purposely dated the Shortfall Agreement after the APA.  Additionally, Defendants pleaded fraudulent inducement in the alternative to the breach of contract claims.

---

[33] *ITW Glob. Investments Inc. v. Am. Indus. Partners Capital Fund IV, L.P.*, 2015 WL 3970908, at *6 (Del. Super. June 24, 2015) (citing *Ameristar Casinos, Inc. v. Resorts Int'l Hldg., LLC*, 2010 WL 1875631, at *11 (Del. Ch. June 24, 2010)).

[34] *Furnari*, 2014 WL 1678419, at *8 (quoting *Narrowstep Inc. v. Onstream Media Corp.,* 2010 WL 5422405, at *15 (Del. Ch.2010)).

[35] *Furnari*, 2014 WL 1678419, at *8.

[36] *ITW Glob.*, 2015 WL 3970908, at *6 (quoting *Osram Sylvania Inc. v. Townsend Ventures, LLC,* 2013 WL 6199554, at *16–17 (Del. Ch.2013)); *see also Aviation W. Charters, LLC v. Freer*, 2015 WL 5138285, at *6 (Del. Super. July 2, 2015) (citing *Osram Sylvania Inc. v. Townsend Ventures, LLC*, 2013 WL 6199554, at *16-17 (Del. Ch. Nov. 19, 2013)).

On a motion to dismiss standard, Defendants may pursue the fraudulent inducement claim as an alternative claim to the breach of contract claim relating to the Shortfall Agreement. This is particularly true because Plaintiffs seek to have the Shortfall Agreement declared "void as the product of unethical contract with Fogle," and "whether the [Shortfall Agreement is superseded by the Merger Clause of the APA."[37]  Although Defendants may pursue their fraudulent inducement claim at this point in the litigation, the claim only survives if the breach of contract claim does not.

### C.    DEFENDANTS PLEADED THE FRAUDULENT INDUCEMENT COUNTERCLAIM WITH PARTICULARITY

Under Superior Court Civil Rule 9(b), a plaintiff must plead fraud and negligence with particularity.[38]  "The purpose of [Rule 9(b)] is to apprise the adversary of the acts or omissions by which it is alleged that a duty has been violated."[39]  To plead fraud or negligence with the particularity required by Rule 9(b), a plaintiff must include the "time, place, contents of the alleged fraud or negligence, as well as the individual accused of committing the fraud" or negligence.[40]  "However, [m]alice, intent knowledge, and other condition of mind of a person may be averred generally."[41]

Defendants have pleaded the fraudulent inducement claim with sufficient particularity. Counterclaim Count V states that Mr. Fogle repeatedly indicated that Plaintiffs would receive full payment for the deal.  These statements were made in emails on October 12, 28, and 31 of 2015.  Additionally, on November 3, 2015, Mr. Fogle stated that the entire amount will be paid

---

[37] Am. Compl. ¶ 115.
[38] Super. Ct. Civ. R.  9(b).
[39] *Mancino v. Webb*, 274 A.2d 711, 713 (Del. Super. 1971).
[40] *See TrueBlue,* 2015 WL 5968726, at *6 (quoting *Universal Capital Mgmt., Inc. v. Micco World, Inc.*, 2012 WL 1413598, at *2 (Del. Super. Feb. 1, 2012)).
[41] *ITW Glob.,* 2015 WL 3970908, at *5.

11

to retire the "catch all letter," which refers to the Shortfall Agreement. Then, Mr. Fogle executed the Shortfall Agreement in his individual capacity as well as the manager of Flowshare. This provides a sufficient pleading of the fraudulent inducement counterclaim.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion.

**IT IS SO ORDERED**

*/s/ Eric M. Davis*
**Eric M. Davis, Judge**

cc: File&ServeXpress