**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**SELENA E. MOLINA**
**MASTER IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

Final Report: February 23, 2022
Date Submitted: November 12, 2021

Julia B. Klein, Esquire
Klein LLC
225 West 14th Street, Ste. 100
Wilmington, DE 19801

Alize Yachting Corp
910 Foulk Road
Wilmington, DE 19803

RE:  ***Moiz Mose Saltiel, et al v. Alize Yachting Corp.***
C.A. No. 2020-0002-SEM

Dear Counsel and Parties:

One might think "[h]aving a yacht is a reason for being more cheerful than most."[1]  Litigating the ownership of a yacht, on the other hand, appears distinctly cheerless.  Such is the fate of those contesting ownership of a motor yacht registered under the Delaware flag, docked in Turkish waters, and bogged down by litigation since 2016.

The now transcontinental litigation began in Turkey—first with a criminal proceeding, then a writ of seizure, and ultimately a civil case.  The twists and turns of the Turkish proceedings led the Delaware Department of Natural Resources and

---

[1] KURT VONNEGUT, CAT'S CRADLE (1963).

Environmental Control to retitle the yacht numerous times. Ultimately, in 2020, the petitioners filed suit in this Court seeking to quiet title and reform a 2016 bill of sale.

Unfortunately, this action has been delayed. Although the respondent is a Delaware company and originally participated in these proceedings, it has failed or refused to secure new Delaware counsel and, through Turkish counsel, voiced a refusal to accept the jurisdiction of, and any rulings by, this Court. I held the respondent was in default, but *sua sponte* questioned this Court's jurisdiction, petitioners' seeming failure to join indispensable parties, and whether the principle of comity supports deference to the first-filed litigation in Turkey.

In this final report, I find this Court does have jurisdiction over the yacht and that the petitioners have joined all indispensable parties. But I believe it is best to provide some level of deference to the first-filed litigation in Turkey. The petitioners are directed to show cause why this action should not be stayed pending a final resolution of the Turkish proceedings. Exceptions to this report will be stayed until a final order is issued staying this case or entering final judgment.

## I.     Background[2]

The ownership and registration of a motor yacht with the vessel number DL 8769 AJ (the "Yacht") has been in dispute since 2016.[3]  The Yacht was owned by Alize Yachting Corp. (the "Respondent"), a Delaware company, and was named "Acar."[4]  On February 19, 2016, Moiz Mose Saltiel and his company MS Maritime Ltd., a Delaware company (the "Company" and, together with Mr. Saltiel, the "Petitioners") engaged a yacht brokerage company Konsept Deniz Yatırımları ve Enerji Sistemleri A.S. (the "Broker"), to assist in the purchase of the Yacht.[5]

At first, all appeared in order. On May 23, 2016, the Respondent executed a bill of sale in favor of the Company, through its representative Uğur Ayik.[6]  That same day, the Company registered the Yacht with the Delaware Department of Natural Resources and Environmental Control ("DNREC") under the name

---

[2] Unless otherwise noted, the facts in this report are taken from the petition and treated as true. *See Hauspie v. Stonington P'rs, Inc.*, 945 A.2d 584, 586 (Del. 2008) ("The effect of a default in answering, however, is to deem admitted all the well-pleaded facts in the complaint").

[3] Docket Item ("D.I.") 1 ¶ 1.

[4] *Id.* ¶ 8, 4.

[5] *Id.* ¶ 7.

[6] *Id.* ¶ 8.

"Melissa."[7]  The next day, the Petitioners registered the Yacht with Çeşme Harbor,

a sea-side resort town in Turkey where the Yacht was located at the time of sale.[8]

But nearly five (5) months after the sale, disputes began.  On October 12,

2016, the Respondent lodged complaints against the Company and the Broker in

Turkish court.[9]  Therein, the Respondent argued the bill of sale was forged by a

representative or affiliate of the Broker and the Respondent had not been paid.[10]  To

prevent loss or damage to the Yacht while the proceeding was pending, the Turkish

court attached or seized the Yacht on October 31, 2016.[11]

When DNREC learned of the seizure, it refused to renew the Company's

registration.[12]  But, it appears, DNREC reversed course in June of 2017, renewing

the Yacht's registration and confirming the Yacht was registered in the Company's

---

[7] *Id.* ¶ 9.

[8] *Id.*

[9] The Petition avers the claims were filed in Çeşme Civil Court. *Id.* ¶ 11. But Ex. C to the Petition appears to be a judgment in a criminal proceeding.  *Id.*, Ex. C.  Ex. D to the Petitioners' November 11, 2021 submission also characterizes the 2016 proceeding as having been initiated by a criminal complaint. D.I. 35, Ex. D.  This is just one example of the confusion that persists around the Turkish proceedings.  On this record, it is difficult to state with any certainty what has or has not transpired in Turkey.  But it is clear at least one Turkish proceeding, filed before this action, remains pending.

[10] *See* D.I. 1, Ex. C.

[11] *Id.* ¶ 11.

[12] *Id.* ¶ 12.  The Petitioners have not explained what effect, if any, this non-renewal had on their or the Respondent's claim to the Yacht.

name.[13]  Perhaps DNREC could read the tea leaves because on August 17, 2017, the Turkish court found there was no evidence of fraud by the Petitioners and, it appears, the matter was decided in favor of the Company.[14]

With the initial fight seemingly over, on September 11, 2017, the Petitioners took physical possession of the Yacht and, three days later, attempted to sell it to Asterix Maritime Ltd. ("Asterix").[15]  Two days later, DNREC changed the Yacht's registration to Asterix, and the Yacht was renamed "Signora."[16]  But, on September 25, 2017, DNREC informed the Petitioners that the documentation for the sale of the Yacht to Asterix was insufficient and stated that the registration would revert to the Company.[17]  Then, in October 2017, DNREC cancelled the Company's registration and recorded the Yacht as belonging to the Respondent.[18]

---

[13] *Id.* ¶¶ 15-16.

[14] *Id.* ¶ 13.  I say appears because, again, the record is unclear.  With their most recent submission, the Petitioners submitted a timeline which seems to indicate the criminal proceedings were not conclusively determined in August of 2017 and, rather, "the investigation continue[d], until 2021, until the prosecutor's office [gave] a decision of non-prosecution[.]" D.I. 35, Ex. D.

[15] D.I. 1 ¶¶ 17-18.

[16] *Id.* ¶ 18.

[17] *Id.* ¶ 19.

[18]  *Id.* ¶ 20.  DNREC's counsel explained the cancellation was made "in an attempt to comply with the court orders" in Turkey but it is unclear which orders, from which court(s), prompted this action. *Id.*, Ex. D.

Armed with DNREC's cancellation, the Respondent, on October 27, 2017, applied for a writ of seizure of the Yacht in Turkey.[19] Two weeks later, on November 10, 2017, the Respondent commenced another civil suit in Turkey, again contesting the Petitioners' ownership.[20] In these 2017 actions, the Respondent argued DNREC's October 2017 cancellation was a determination of ownership, entitling them to a declaration that they—not the Company—owned the Yacht. It appears both actions remain pending, contested by the Petitioners.[21]

Contrary to the Respondent's representations, DNREC's counsel clarified on February 5, 2019 that "DNREC is not responsible, nor capable, of determining ownership of a vessel."[22] Counsel explained that after title was reverted to the Respondent in 2017, "DNREC then determined that Acar would not be re-registered without further information."[23] Counsel went on to explain "making a determination regarding ownership is beyond the powers granted to DNREC. The actions of DNREC staff . . . are not evidence of ownership and should not be taken as such."[24]

---

[19] *Id.* ¶ 21.

[20] *Id.* ¶ 22.

[21] *See* D.I. 35, Ex. D.

[22] D.I. 1, Ex. D.

[23] *Id.*

[24] *Id.*

Attempting to resolve this matter once and for all, the Petitioners filed a petition to quiet title and reform the 2016 bill of sale on January 2, 2020.[25] On February 7, 2020, the Respondent answered, and it appeared the matter was moving forward on the normal track.[26] But on December 10, 2020, the Respondent's Delaware counsel, Gellert Scali Busenkell and Brown, LLC, filed a motion to withdraw as counsel, explaining the Respondent had not met its payment obligations.[27] Based on Delaware counsel's representation that Turkish counsel for the Respondent was seeking replacement Delaware counsel, I granted the motion to withdraw.[28] But, more than four (4) months later, the Petitioners informed me that the Respondent refused to secure successor Delaware counsel.[29] In response, I issued an order on June 7, 2021, requiring the Respondent to retain successor Delaware counsel within ten (10) days.[30]

The Respondent failed to retain successor Delaware Counsel and the Petitioners filed a motion for default judgment on June 29, 2021.[31] At the default

---

[25] D.I. 1.

[26] D.I. 5.

[27] D.I. 11.

[28] D.I. 13.

[29] D.I. 14.

[30] D.I. 15.

[31] D.I. 16.

hearing on October 12, 2021, I found the Respondent was in default, but declined to grant the relief requested by the Petitioners.[32] Rather, I directed the Petitioners to submit a letter brief regarding jurisdiction, the ongoing proceedings in the Turkish courts, and why DNREC and Asterix did not need to be joined to this case.[33] On November 12, 2021, the Petitioners filed the requested brief (the "Brief").[34] The Brief addressed each question I posed to the Petitioners and those questions are now ripe for my decision.[35]

---

[32] D.I. 23 ("Tr.") 23:12-14. Turkish counsel appeared at the hearing and represented that the Respondent was unable to secure Delaware counsel because they could not locate a Delaware attorney familiar with the specialized practice in the Court of Chancery. Tr. 5:1-7. I explained to the Respondent's Turkish counsel that the Respondent needed to be represented by a Delaware attorney and denied her request that Turkish counsel be admitted as counsel to the Respondent in this proceeding. Tr. 6:9-17. After I issued my ruling, I allowed Turkish counsel to ask several questions and endeavored to answer those to the best of my ability. Tr. 28:4-33:9. Despite my emphasis that only Delaware counsel could advocate on the Respondent's behalf in this action, Turkish counsel to the Respondent sent a lengthy email to court staff on October 22, 2021, attempting to advocate on behalf of the Respondent, contesting this Court's jurisdiction, and explaining the Respondent "will not accept any decision that will be against [it] and in favor of the Petitioner[s]" by this Court. D.I. 24 (emphasis removed). I explained in a November 2, 2021 letter response that this email was not appropriate and any requests for relief contained therein were denied. D.I. 34.

[33] Tr. 24:3-9.

[34] D.I. 35.

[35] As I explained to Turkish counsel at the default hearing, the Respondents were not permitted submit further filings unless they did so through Delaware counsel. *See* Tr. 31:2-22. To date, Delaware counsel has not entered an appearance on the Respondent's behalf.

## II.    Analysis

Although the Respondent has defaulted, I must ensure this Court has jurisdiction, all indispensable parties before it, and that I am affording the appropriate level of deference to the first-filed proceedings in Turkey, before judgment is entered.  As explained herein, I find this Court does have jurisdiction and all indispensable parties, but the *McWane* doctrine favors a stay of this proceeding.  I hereby direct the Petitioners to show cause why a stay should not be entered.

### A. Asterix and DNREC are not indispensable parties.

I raised *sua sponte* whether Asterix and DNREC are indispensable parties.  I did so because there was an attempt to transfer title of the Yacht to Asterix and DNREC would, by the order requested by the Petitioners, be compelled to change their registration records.  Under Court of Chancery Rule 19, a party is indispensable and must be joined if the following factors are met:

> (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.[36]

---

[36] Del. Ct. Ch. R. 19(a).

The Petitioners argue that Asterix is not a necessary party because the sale of the Yacht from the Petitioners to Asterix was never consummated.[37]  In a signed declaration, Orhan Deval, the owner of Asterix, represented that Asterix never owned the Yacht because Asterix did not pay the Petitioners for the attempted transfer.[38]  Orhan Deval declared that Asterix does not, and will not in the future, claim any interest in the Yacht.[39]  Regarding DNREC, the Petitioners point me to the February 5, 2019 letter from DNREC's counsel.[40]

On this record, I find neither Asterix nor DNREC is a necessary party.  I find I can afford complete relief without either and neither claim an interest in the Yacht or who is declared the owner.  Although Petitioners' requested relief will require action from DNREC, DNREC has expressed a willingness to yield to the appropriate court's decision regarding ownership.  Under these circumstances, I find neither party is indispensable, and the matter may proceed in their absence.

---

[37] D.I. 35.

[38] *Id.*, Ex. A.  The declaration was signed "under penalty of perjury" citing 10 *Del. C.* §§ 5351-59.  *Id.*

[39] *Id.*

[40]  *Id.*, Ex. B; D.I. 1, Ex. D.

**B. This Court Has Jurisdiction Over The Yacht But May Decline to Exercise Jurisdiction under** *McWane***.**

I also raised, *sua sponte*, whether this Court had jurisdiction over the Yacht, which has been in Turkish waters since, at least, 2016. The Petitioners argue the physical location of the Yacht does not limit this Court's jurisdiction, because the Yacht is registered under the Delaware flag, not the Turkish flag.[41]

Under the "Law of the Flag" "[e]ach state under international law may determine for itself the conditions on which it will grant its nationality to a merchant ship, thereby accepting responsibility for it and acquiring authority over it. Nationality [of a vessel] is evidenced to the world by the ship's papers and its flag."[42] Here, the Yacht is registered in Delaware and has been since, at least, 2016. Thus, this Court has jurisdiction to provide *in rem* relief to quiet title.

But Delaware's jurisdiction over the Yacht is not exclusive. The Yacht, by voluntarily entering the territorial limits of Turkey, subjected herself to its jurisdiction and "[d]uring her stay she is entitled to the protection of the laws of [Turkey] and correlatively is bound to yield obedience to them."[43] Certain Turkish courts may also have jurisdiction to determine whether Turkish residents or citizens

---

[41] D.I. 35.

[42] *Lauritzen v. Larsen*, 345 U.S. 571, 584 (1953).

[43] *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 124 (1923).

acted improperly in connection with the underlying sale of the Yacht. Turkey "may out of considerations of public policy choose to forego the exertion of its jurisdiction or to exert the same in only a limited way, but this is a matter resting solely in its discretion."[44] It appears Turkey has not so declined, as (at least) the 2017 civil case filed in Turkey remains pending.

This supports a stay of this litigation for *forum non conveniens* under *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*[45] "The doctrine of *forum non conveniens* grants the court discretionary authority to decline jurisdiction where 'considerations of convenience, expense, and the interests of justice' show that the plaintiff's chosen forum would be 'unduly inconvenient, expensive, and otherwise inappropriate.'"[46] Under *McWane*, this Court may "defer more readily to the court in which related litigation was first filed[,]" if the answer to the following three-part question is "yes": "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the

---

[44] *Id.*

[45] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).

[46] *Zilberstein v. Frankenstein*, 2021 WL 5289104, at *3 n.13 (Del. Super. Nov. 12, 2021).

same issues?"[47] When answered in the affirmative, there is a "strong preference" to stay or dismiss the case that was filed later.[48]

The 2017 civil case filed by the Respondents in Turkey predates this litigation and remains pending. That case and this one involve the same parties, the Petitioners and the Respondent, and the same underlying dispute regarding who owns the Yacht. Although the Yacht is registered in Delaware, because it was in Turkey's waters when the alleged fraud or other improper conduct occurred, and it appears the contested sale was consummated in Turkey, the Turkish court may well have concurrent jurisdiction over the parties' dispute. A stay is thus warranted if the Turkish court can provide prompt and complete justice. The Petitioners are directed to show cause why this action should not be stayed by explaining why the Turkish court is unable to do prompt and complete justice.

## III. Conclusion

For the foregoing reasons, I find this Court has jurisdiction to enter an *in rem* judgment quieting title to the Yacht. The Petitioners have also included all indispensable parties. But, because there is first-filed litigation in Turkey involving

---

[47] *Amgine Techs. (US), Inc. v. Miller*, 2021 WL 5564688, at *5 (Del. Ch. Nov. 29, 2021) (citations and quotation marks omitted). *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015) (explaining the application of *McWane*).

[48] *LG Elecs., Inc.*, 114 A.3d at 1252.

the same parties and issues, I find a stay of this litigation may be appropriate. The Petitioners shall show cause as directed herein by filing a letter brief within thirty (30) days, not to exceed ten (10) pages double spaced. This is a final report and exceptions are stayed until an order is issued staying or declining to stay this action.

Respectfully,

*/s/ Selena E. Molina*

Master in Chancery