# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CRE NIAGARA HOLDINGS, LLC, )
CLUB EXPLORIA, LLC, and CRE )
NIAGARA PARTICIPATION )
HOLDINGS, LLC, )
                    Plaintiffs, )
                             )     C.A. No. N20C-05-157
  v.                         )        PRW  CCLD
                             )
                             )
RESORTS GROUP, INC., )
                  Defendant. )

Submitted: February 19, 2021
Decided: April 7, 2021

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Resorts Group, Inc.'s Motion to Dismiss*
**DENIED.**

Richard P. Rollo, Esquire, Travis S. Hunter, Esquire, Dorronda R. Bordley, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Plaintiffs CRE Niagara Holdings, LLC, Club Exploria, LLC, and CRE Niagara Participation Holdings, LLC.*

Garvan McDaniel, Esquire, HOGAN MCDANIEL, Wilmington, Delaware; David S. Rosner, Esquire, Jed I. Bergman, Esquire, Paul J. Burgo, Esquire, Stephan P. Thomasch, Esquire, KASOWITZ BENSON TORRES LLP, New York, New York, *Attorneys for Defendant Resorts Group, Inc.*

**WALLACE, J.**

Plaintiff CRE Niagara Holdings, LLC, filed this suit contesting its 2017 purchase of a resort and timeshare business. CRE Niagara Holdings, LLC, and its co-plaintiffs bring claims of fraudulent inducement and breach of contract and seek declaratory judgment against Defendant Resorts Group, Inc. They say the latter made false representations in an effort to induce execution of the agreements that brought about that sale.

Defendant seeks complete dismissal of all Plaintiffs' claims on three grounds. First, Defendant moves under Superior Court Civil Rule 12(b)(6), arguing the claims are time-barred by contractual provisions and, alternatively, fail to allege fraud with Superior Court Civil Rule 9(b) particularity. Next, Defendant moves under Superior Court Civil Rule 12(b)(3) and insists this Court is not the correct forum for this suit. Last, Defendant invokes the doctrine of *forum non conveniens*.

Having considered the record and the parties' arguments, Defendant Resorts Group, Inc.'s Motion to Dismiss is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES

Plaintiffs CRE Niagara Holdings, LLC, Club Exploria, LLC, as successor by merger to CRE Bushkill Group, LLC, and CRE Participation Holdings, LLC (collectively "CRE"), are Delaware limited liability companies.[1]  CRE Niagara

---

[1]    First Am. Compl. 1, ¶¶ 5-7, Sept. 15, 2020 (D.I. 40).

Holdings, LLC and Club Exploria, LLC, are also citizens of Pennsylvania as they have members who are citizens of Pennsylvania.[2] Defendant Resorts Group, Inc. ("RGI") is a Pennsylvania corporation with its principal place of business in East Stroudsburg, Pennsylvania.[3] RGI is a resort and timeshare business in the Poconos Mountain region of Pennsylvania.[4]

## B. THE UNDERLYING SALE

In May 2017, RGI and CRE Niagara Holdings, LLC, entered into a Unit Asset Purchase Agreement ("UAPA"), through which CRE Niagara Holdings, LLC, acquired certain timeshare resort assets and ownership of certain entities, including CRE Bushkill, LLC.[5] CRE Niagara, LLC, purchased the timeshare business and existing contracts with the timeshare members and RGI retained the majority right to the payment stream on those existing contracts.[6] This transaction was effectuated via multiple written agreements. The agreements relevant here are: (1) the UAPA, through which CRE purchased the assets of the timeshare resorts and acquired ownership of certain entities including the CRE Bushkill Group, LLC;[7]

---

[2] *Id.* ¶ 10.

[3] *Id.* ¶ 7.

[4] *Id.* ¶ 13.

[5] *Id.* ¶ 2.

[6] *Id.* ¶¶ 23-25.

[7] *Id.* ¶ 16.

(2) the Servicing Agreement that addressed the servicing of receivables from sales by RGI;[8] and (3) the Participation Agreement that provided CRE an interest in the receivables collected by RGI from the Servicing Agreement (the Servicing Agreement and Participation Agreement are hereafter the "Ancillary Agreements").[9]

Because the payment stream from the pre-closing sales depended entirely on CRE's operation of the timeshares, RGI required CRE to perform in accordance with its past practices and adhere to a detailed procedure set forth in Schedule 1 of the Servicing Agreement.[10] The parties agreed upon certain projections for expected revenues generated by the pre-closing sales, with any shortfall reducing CRE's share of the payment stream.[11]

At the crux of this dispute are the representations and warranties made in Section 4.11 of the UAPA, entitled "Absence of Certain Changes." That reads:

> (a) Since the Audited Balance Sheet Date, (i) the businesses of DRH, Company and Company's Subsidiaries have been conducted in the usual, regular and ordinary course consistent with past practices, (ii) there has not been any damage, destruction or other casualty loss (whether or not covered by insurance) affecting any asset of DRH, Company or any of Company's Subsidiaries and (iii) there has not been any event, occurrence or development (whether described in one

---

[8]   *Id.* ¶ 25.

[9]   *Id.* ¶ 23.

[10]   First Am. Compl., Ex. C § 3.2(a), (d), (e) (Servicing Agreement); Ex. B § 5.1 (Participation Agreement).

[11]   First Am. Compl. ¶¶ 24-25; First Am. Compl., Ex. B § 2.1(C) (Participation Agreement).

or more sections of this ARTICLE IV or otherwise) that, individually or in the aggregate, has had or that could reasonably be expected to have a Material Adverse Effect.

(b) In addition (and without limiting the generality of the foregoing), since the Audited Balance Sheet Date, Seller has not, except as contemplated in this Agreement and by the Transactions, permitted DRH, Company or Company's Subsidiaries to: . . .

(viii) make any change in any method of accounting or accounting practice or policy; . . .

(xii) change, in any material respect, any credit policies or policies or practices relating to the collection of the Timeshare Installment Contracts and Accounts Receivable or payment of payables;

(xiii) change, in any material respect, the underwriting standards or other credit criteria for the sale and/or financing of the sale of Timeshare Interests;

(xiv) change the pricing for any Timeshare Interests held for sale by Company or any of its Subsidiary as of the Closing Date; . . .

(xvi) authorize any of, or commit or agree, whether in writing or otherwise, to take or to do any of the foregoing actions.[12]

According to CRE, prior to closing, RGI began selling timeshare interests to purchasers who were markedly less creditworthy than the pool of past buyers.[13] Further, CRE learned that RGI had, pre-closing, "dramatically relaxed its

---

[12] First Am. Compl., Ex. A § 4.11 (UAPA).

[13] First Am. Compl. ¶ 28.

underwriting standards and intentionally entered into Timeshare Contracts with obligors with extremely low or non-existent FICO Credit scores . . ."[14] These practices, according to CRE, were directly contrary to the representations and warranties made by RGI in the UAPA.[15]

In May 2018, RGI sent CRE a "Notice of Shortfall" letter, asserting that the collected funds did not meet the Schedule 2 benchmarks.[16] CRE responded on June 6, 2018 ("June 6 Letter"), denying that such shortfall had occurred, instead alleging that the deficiency in the disputed months were due to RGI's misrepresentations and improprieties.[17]

## C. THE PARTIES SUE

After attempting to negotiate their disputes, CRE filed this action on May 18, 2020.[18] That same day, RGI filed its complaint in the United States District Court for the Southern District of New York asserting claims for breach of contract, indemnification, fraudulent inducement, and tortious interference relating to the Ancillary Agreements.[19] The next day, RGI filed a separate action in the United

---

[14] *Id.* ¶ 30.

[15] *Id.* ¶ 28.

[16] *Id.* ¶ 29.

[17] *Id.* ¶¶ 30-31; First Am. Compl., Ex. E (June 6 Letter).

[18] Compl., May 18, 2020 (D.I. 1).

[19] Def.'s Mot. to Dismiss at 10, Oct. 15, 2020 (D.I. 47).

States District Court for the District of Delaware.[20]  In August 2020, both federal actions were dismissed for lack of diversity jurisdiction.[21]  As a result, RGI refiled its claims in New York state court on August 12, 2020. [22]

After RGI filed its second Motion to Dismiss,[23] CRE filed its First Amended Complaint ("FAC").[24]  Now before the Court is RGI's Motion to Dismiss that FAC.[25]

## II. PARTIES' CONTENTIONS

### A. CRE'S FIRST AMENDED COMPLAINT

CRE's First Amended Complaint sets forth three claims against RGI.[26] Counts I (Fraudulent Inducement) and II (Breach of Contract/Indemnification) both relate to the alleged false representations made by RGI, violating Section 4.11 of the UAPA.[27]  Specifically, CRE alleges that when the representations were made at the

---

[20]  *Id*.; First Am. Compl. ¶ 10.

[21]  Pls.' Opp'n Br. at 5, Nov. 5, 2020 (D.I. 56).

[22]  Def.'s Mot. to Dismiss at 10-11.

[23]  Def.'s Am. Mot. to Dismiss, Aug, 7, 2020 (D.I. 28).

[24]  First Am. Compl. ¶ 2.

[25]  Def.'s Mot. to Dismiss.

[26]  First Am. Compl. ¶¶ 62-87.

[27]  *Id*. ¶¶ 62-71, 72-83.

time of UAPA's signing and closing, RGI knew the Section 4.11 representations were false and that these false representations were made with the intent to induce CRE to close the transaction.[28] Further, CRE alleges that in making these false representations, RGI also breached the UAPA.[29] In its third Count against RGI, CRE asks the Court to declare that it is not in breach of the UAPA, Participation Agreement, and/or the Servicing Agreement.[30]

## B. RGI'S MOTION TO DISMISS[31]

RGI first contends that Counts I and II of CRE's FAC—asserting fraudulent inducement and breach of the representations and warranties in UAPA Section 4.11—are, as of May 19, 2019, time-barred under UAPA Section 8.1.[32] And, RGI says, that while Section 8.1's survival period can be extended through Section 8.4's notice of indemnification provision, CRE filed no such notice.[33] RGI thinks that

---

[28] *Id.* ¶¶ 62-71.

[29] *Id.* ¶¶ 72-83.

[30] *Id.* ¶¶ 84-87.

[31] RGI's Motion to Dismiss includes information and various exhibits outside of the four corners of the FAC. For the purposes of this decision, the Court will rely only on the allegations set forth in the FAC and its accompanying exhibits.

[32] Def.'s Mot. to Dismiss at 12; First Am. Compl., Ex. A § 8.1 (UAPA). Section 8.1 provides that the representations and warranties made by the parties in the UAPA survive for twenty-four months following the closing date.

[33] Def.'s Mot. to Dismiss at 12-14.

CRE's June 6 Letter was not a timely indemnification notice, thus it failed to meet the requirements of Section 8.4.[34] According to RGI, the June 6 Letter was merely a response to RGI's contractually required Notice of Shortfall that asserted no breach of a UAPA representation and warranty.[35]

Next, RGI suggests that Counts I and II are barred because CRE knew and had access to the allegedly concealed facts: the FICO scores for new members.[36] In RGI's view, Section 8.5(b) of the UAPA bars CRE from obtaining indemnification or other remedies for a breach of a representation and warranty because it "had actual knowledge of the existence of facts or circumstances that would be reasonably likely to result in . . . a breach."[37]

Further, RGI argues, CRE's fraud claim (Count I) requires pleading justifiable reliance with particularity, and that CRE cannot do so because it "was aware of, and enjoyed complete access to, the FICO scores at all times prior to closing."[38] RGI outlines multiple means by which CRE had unfettered access to that

---

[34] *Id*. at 14.

[35] *Id*. at 14-15.

[36] *Id*. at 18.

[37] *Id*.; First Am. Compl., Ex. A § 8.5(b).

[38] Def.'s Mot. to Dismiss at 19-20.

information and contends that CRE even confirms this in its FAC, admitting knowledge of RGI's purported change in practices during 2016.[39]

RGI argues too that CRE's Counts I and II fail to plead material misrepresentation, and intent or knowledge on RGI's part.[40] Specifically, RGI contends that the FAC does not allege sufficient facts to support the inference that it actually permitted the Bushkill Group to "change, in any material respect, the underwriting standards or other credit criteria."[41] RGI says that CRE's reliance on the shift of weighted average FICO scores between 2016-2017 is an apples-to-oranges comparison, as each individual weighted average FICO score varies based on the date it was taken and members' specific obligations.[42] Additionally, RGI maintains that it did not warrant the FICO scores, but instead warranted that the Bushkill Group would not change its underwriting standards.[43] And, RGI says, there are no facts to suggest that anyone at RGI decided to change the underwriting standards.[44]

---

[39] *Id*. at 20-22; First Am. Compl., Ex. H at 3 (Nov. 20, 2019 Default Notice Letter).

[40] Def.'s Mot. to Dismiss at 23-27.

[41] *Id*. at 23; First Am. Compl., Ex. A § 4.11(b)(xiii)).

[42] Def.'s Mot. to Dismiss at 24.

[43] *Id*. at 25.

[44] *Id*.

RGI posits that CRE's allegation that it "either knew [the representations] were false or made such representations with reckless indifference to their truth or falsity" is conclusory and insufficient as a matter of law.[45] RGI insists that CRE's fraud claim fails to plead scienter with particularity, which is not only fatal to its claim but also defeats CRE's attempts to invoke the "willful misconduct, fraud, or intentional misrepresentation" exception to the UAPA's indemnification threshold.[46] As the UAPA limits recovery for non-willful breaches, according to RGI, CRE's claims are at most limited to the indemnification cap, and must be dismissed to the extent it seeks special damages.[47]

RGI next argues that CRE's non-UAPA claims must be dismissed under Superior Court Civil Rule 12(b)(3) for improper venue.[48] According to RGI, as CRE's fraudulent inducement and declaratory judgment claims relate to the Ancillary Agreements, they are governed by those agreements' forum selection clauses and must be litigated in New York.[49]

---

[45] *Id*. at 27; First Am. Compl. ¶ 65.

[46] Def.'s Mot. to Dismiss at 26-27; *see also* First Am. Compl., Ex. A § 8.5(a).

[47] Def.'s Mot. to Dismiss at 28; First Am. Compl., Ex. A § 8.5(a).

[48] Def.'s Mot. to Dismiss at 28.

[49] *Id*. at 28-29.

-10-

Last of all, RGI urges that if any portion of CRE's complaint survives this current attack, that remnant ought to be dismissed or stayed in favor of the New York action under the doctrine of *forum non conveniens*.[50] Incanting Delaware's six-factor test,[51] RGI suggests Delaware is an inconvenient forum because: (1) no relevant evidence is located in Delaware; (2) all critical witnesses are in New York; (3) the "premises" involved is in Pennsylvania; (4) the claims under the Ancillary Agreements are all governed by New York law; (5) allowing both the New York action and this action to proceed would unnecessarily strain the Court's resources given Delaware's limited connection to the case; and (6) there are similar actions pending in other jurisdictions that may affect the outcome here.[52]

---

[50]  *Id*. at 31.

[51]  From *Schmidt v. Wash. Newspaper Publ'g Co.*, 2019 WL 4785560, at *6 (Del. Super. Ct. Sept. 30, 2019) (setting out the six *Cryo-Maid* factors derived from *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964) and its progeny).

[52]  Def.'s Mot. to Dismiss at 31-33. At argument, for the first time, RGI challenged that, with the New York state court proceeding ongoing, the Delaware Declaratory Judgment claim (Count III) is "overripe." Oral Arg. Tr.at 37, Jan. 7, 2021 (D.I. 67). Relying on *Sec. Nat'l Mortg. Co. v. Lehman Brothers Hldgs. Inc*. (2016 WL 6396343, at *8 (Del. Super. Ct. Aug. 24, 2016)), RGI says there's now no reason for bringing Count III in Delaware and it should, therefore, be dismissed. Oral Arg. Tr. at 37-38. To its own detriment, RGI failed to elaborate how or why the overripeness factors from *Lehman Brothers* apply here. And RGI gave neither the Court nor its opponents an inkling it would raise this at argument. Given these failings, the Court need not and will not tarry to entertain RGI's overripeness contention. *See Saunders v. Preholdings Hampstead, LLC*, 2012 WL 1995838, at *3 (Del. Super. Ct. May 23, 2012) ("issues not addressed in briefing, and raised for the first time during oral argument, are deemed waived.").

-11-

## III.  APPLICABLE LEGAL STANDARDS

### A. VENUE

Superior Court Civil Rule 12(b)(3) governs the dismissal or stay of an action due to improper venue.  The Court should give effect to the terms of the parties' "private agreements' . . ., to resolve disputes in a contractually-designated judicial forum, out of respect to the parties' contractual designation."[53]  "The Court can grant dismissal prior to discovery, on the basis of affidavits and documentary evidence, if the plaintiff cannot make out a *prima facie* case in support of its position."[54]

### B. FAILURE TO STATE A CLAIM

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[55]  Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss

---

[53]  *Nat'l Union Fire Ins. Co. of Pittsburgh, P.a. v. Trustwave Hldgs., Inc.*, 2016 WL 2354621, at *2 (Del. Super. Ct. May 3, 2016) (citing *Loveman v. Nusmile, Inc.,* 2009 WL 847655, at *2 (Del. Super. Ct. Mar. 31, 2009)).

[54]  *Id.*

[55]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting Superior Court Civil Rule 12(b)(6) (internal quotation marks omitted)).

the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[56]

"If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[57]

## C. CIVIL RULE 9(b)'S HEIGHTENED PLEADING STANDARD.

Delaware law requires plaintiffs to plead fraud and misrepresentation claims with particularity—a heightened pleading standard.[58] To satisfy Civil Rule 9(b), a complaint must allege:

> (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations. Essentially, the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim.[59]

## IV. DISCUSSION

### A. JURISDICTION

Before anything else, the Court must determine whether it has jurisdiction to hear this case at all. Delaware courts generally defer to the designated judicial forum

---

[56] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[57] *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[58] Super. Ct. Civ. R. 9(b).

[59] *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

that parties lay out in their negotiated agreements.[60]  Where a valid forum selection clause "limits a plaintiff to a single forum, that clause operates to divest a court that otherwise has jurisdiction of its status as a proper venue for the plaintiff to sue."[61]

### 1. Battle of the Forum Selection Clauses.

Each of the three Agreements—the UAPA, the Servicing Agreement, and the Participation Agreement—contains a competing forum selection clause.  So, RGI cherry-picks its favorites.  RGI insists Delaware is the wrong forum because the Ancillary Agreements contain New York forum selection clauses.[62]  But this case isn't about the Ancillary Agreements; it's about the UAPA.

The UAPA, signed May 19, 2017, governed the acquisition of the timeshare resorts and its assets, and contains the following forum selection clause:

> Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of the United States District Court for the District of Delaware, or if such federal court is unavailable, state courts located in the State of Delaware, County of New Castle for the purposes of any suit, action or other proceeding arising out of *this Agreement, any Ancillary Agreement or the Transactions*. . . . Each party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit, or proceeding arising out of *this Agreement, any Ancillary*

---

[60]  *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Ct. Mar. 31, 2009) (quoting *Halpern Eye Assocs., P.A. v. E.A Crowell & Assocs., Inc.*, 2007 WL 3231617, at *4 (Del. Super. Ct. Mar. 31, 2009)) (internal quotation marks omitted).

[61]  *Id*. at *3.

[62]  Def.'s Mot. to Dismiss at 28-29; First Am. Compl., Ex. B § 8.6 (Participation Agreement); Ex. C § 6.6 (Servicing Agreement).

*Agreement, or the Transactions* in such courts and hereby and thereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.[63]

The UAPA identifies both the Participation Agreement and the Servicing Agreement, by name, as "Ancillary Agreements."[64]

The Participation Agreement—signed May 18, 2017, that is, the day before the UAPA—governs the parties' ongoing rights and interests with respect to the timeshare resort portfolio, and contains the following forum selection clause:

Each Party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Supreme Court of New York sitting in New York County and of the United States District Court for the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to *this Agreement* . . . Each Party irrevocably and unconditionally waives, any objection to laying of venue of any action, suit or proceeding arising out of *this Agreement* . . .[65]

The Servicing Agreement, also signed the day before the UAPA, governs CRE's obligations of servicing the Resort portfolio and also contained a forum selection clause similar to the clause contained in the Participation Agreement:

---

[63] First Am. Compl., Ex. A § 9.6 (UAPA).

[64] *Id*. § 1.1.

[65] First Am. Compl., Ex. B § 8.6 (Participation Agreement).

> Each Party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Supreme Court of New York sitting in New York County and of the United States District Court for the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to *this Agreement* . . . Each Party irrevocably and unconditionally waives, any objection to laying of venue of any action, suit or proceeding arising out of *this Agreement* . . .[66]

Pitted against each other, the UAPA's forum selection clause wins for two reasons. *First*, as RGI concedes,[67] CRE's affirmative claims are based on an alleged breach of the representations and warranties set forth in the UAPA.[68]

*Second*, the UAPA is the later-executed document, and its forum selection clause delimits a broader scope than the Participation and Servicing Agreements.[69] Indeed, Section 9.6 of the UAPA provides that the claims "arising out of this Agreement, any Ancillary Agreement or the Transactions" belong in Delaware.[70]

---

[66] First Am. Compl., Ex. C § 6.6 (Servicing Agreement).

[67] Dec. 10, 2020 Hearing Presentation, at slide 30 (D.I. 65).

[68] *See SRL Mondani, LLC v. Modani Spa Resort, Ltd.*, 2017 WL 1555876, at *3 (Del. Super. Ct. Apr. 28, 2017) (ruling that the forum selection clause of the agreements the plaintiffs sought to enforce controls).

[69] *Gea Sys. N. Am. LLC v. Golden State Foods Corp.*, 2020 WL 3047207, at *5 (Del. Super. Ct. June 8, 2020); *SIGA Tech. Inc., v. PharmAthene, Inc.*, 67 A.3d 330, 343 (Del. 2013).

[70] First Am. Compl., Ex. A § 9.6 (UAPA).

In contrast, the Ancillary Agreements restrict New York jurisdiction to their terms alone.[71]

Even more, UAPA Section 9.6's plain language itself includes the Ancillary Agreements within its forum selection clause. And the UAPA plainly defines the Ancillary Agreements to include the Servicing and Participation Agreements.[72] This can only mean the parties intended to include disputes regarding these two (or too) within the UAPA's forum selection clause.

There being no ambiguity in the UAPA's forum selection clause as to which claims are to be brought in Delaware and there being no ambiguity as to which contracts are at issue here, the UAPA's forum selection clause governs. This Court is the proper forum for CRE's suit.

## 2. Each party waived any right to incant *forum non conveniens*.

Still, RGI insists CRE picked the wrong place to sue. To RGI, Delaware is not only the wrong forum per their agreements, but also an inconvenient one. So, RGI asks the Court to undertake a *forum non conveniens* analysis using the *Gramercy* intermediate standard.[73] But there's no need. Why? Because in the UAPA, RGI agreed it would never bring the very argument it now has.

---

[71] First Am. Compl., Ex. B § 8.6 (Participation Agreement); Ex. C § 6.6 (Servicing Agreement).

[72] First Am. Compl., Ex. A § 1.1 (UAPA).

[73] From *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033 (Del. 2017). Oral Arg. Tr. at 34-35.

"Delaware enables sophisticated counterparties to contract as they wish and her courts are loath to disturb bilaterally-negotiated terms."[74] Pro-contractarian at its core, Delaware law recognizes that the value of a contract is maximized by enforcing it as written and that a contract's promise is worth far less when it can be avoided upon just its maker's remorse.[75] Thus, "as a matter of fundamental public policy," Delaware courts will enforce voluntary business dealings where their terms are clear and unambiguous.[76] And accordingly, Delaware courts find forum selection clauses are presumptively valid and will specifically enforce them unless the resisting party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching."[77]

Here, the controlling forum selection clause plainly waives a *forum non conveniens* challenge. The latter part of Section 9.6 of the UAPA explicitly states:

> Each party irrevocably and unconditionally waives any objection
> to the laying of venue of any action, suit, or proceeding arising

---

[74] *Unbound Partners Ltd. P'ship v. Invoy Hldgs., Inc.*, 2021 WL 1016442, at *9 (Del. Super. Ct. Mar. 17, 2021) (citing cases).

[75] *Id.* (quoting *Lyons Ins. Agency, Inc. v. Wark*, 2020 WL 429114, at *1 (Del. Ch. Jan. 28, 2020)).

[76] *Unbound*, 2021 WL 1016442 at *9 (internal quotation marks omitted).

[77] *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) (internal quotation marks and citations omitted). RGI says only that applying the UAPA's forum selection clause would be "manifestly unreasonable" as it would require the inefficiency of simultaneous litigation of two cases in two separate forums. Def.'s Mot. to Dismiss Reply Br., at 20, Nov. 19, 2020 (D.I. 58). But as the Court detailed above, the UAPA is the relevant contract here and its forum selection clause unambiguously applies. RGI makes no case as to why its enforcement would be *unjust*. Nor does RGI even assert that provision is invalid.

out of *this Agreement, any Ancillary Agreement, or the Transactions* in such courts and hereby and thereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.[78]

Put simply, RGI clearly agreed not to challenge the UAPA's selected forum. And RGI now offers no sensible reason to disturb these sophisticated counterparties' unambiguous intent. Accordingly, the Court must respect the parties' explicit agreement—RGI cannot claim *forum non conveniens*.

## B. TIMELINESS OF CRE'S CLAIMS

Delaware courts "follow the general principle that contractual limitation of actions periods are valid if they are reasonable."[79] And a contractual limitations period that is shorter than the statutory period is oft considered reasonable.[80] "Delaware courts have interpreted contractual provisions that limit the survival of representations and warranties as evidencing an intent to shorten the time period in

---

[78] First Am. Compl., Ex. A § 9.6 (UAPA). RGI argues that the forum selection clauses in the Participation Agreement and Servicing Agreement also contain similar waiver language, yet that did not deter CRE from moving to dismiss based on the same grounds in the New York action. Def.'s Mot. to Dismiss Reply Br., at 19. As addressed in footnote 31 the Court limits itself to information and contentions stemming from what is included in CRE's FAC and its accompanying exhibits.

[79] *Shaw v. Aetna Life Ins. Co.*, 395 A.2d 384, 386 (Del. Super. Ct. 1978).

[80] *Id.*; *Bonanza Rest. Co. v. Wink*, 2012 WL 1415512, at * 1 (Del. Super. Ct. Apr. 17, 2012) ("A contractual provision that reasonably abbreviates the time for filing a claim is enforceable because it enhances public policy in favor of resolving claims."); *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *12 (Del. Ch. Sept. 18, 2020).

which a claim for breach of those representations and warranties may be brought."[81] So a claim must be filed before the survival period expires in order to be considered by the Court.[82]

### 1. It appears CRE has pled proper notice and avoids dismissal now.

RGI contends that Section 8.1's twenty-four-month survival period bars CRE's claims for breach of the representation and warranties in Section 4.11.[83] UAPA Section 8.1 reads: "the representations and warranties of the Parties . . . shall survive the Closing until the date that is twenty-four months following the Closing date."[84] This period can be extended if the aggrieved party serves a notice of indemnification for breach that meets the requirements of Section 8.4.[85] To do so, a notice of a Direct Claim for damages must: (1) "describe the Direct Claim in reasonable detail," (2) "include copies of all material written evidence thereof," and (3) "indicate the estimated amount, if reasonably predictable, of Damages that has been or may be sustained."[86]

---

[81] *Wind Point Partners VII-A, L.P. v. Insight Equity A.P. X Co., LLC*, 2020 WL 5054791, at *8 (Del. Super. Ct. Aug. 17, 2020).

[82] *GRT, Inc. v. Marathon GTF Tech., LTD.*, 2011 WL 2682898, at *3 (Del. Ch. July 11, 2011).

[83] Def.'s Mot. to Dismiss at 6-7.

[84] First Am. Compl., Ex. A § 8.1(a).

[85] *Id.*

[86] *Id.* § 8.4.

CRE says that it has pled that proper notice was given and that is all that is required at this point.[87]  Just so.

In Delaware, the issue of timeliness "may be determined on a motion to dismiss if the facts pled in the complaint, and the documents incorporated within the complaint, demonstrate that the claims are untimely."[88]  "In considering such a motion, the Court must apply the plaintiff-friendly principles of Rule 12(b)(6), accepting as true the Complaint's well-pled allegations and drawing all reasonable inferences in Plaintiffs' favor."[89]

Throughout the FAC, CRE alleges that it gave such notice.  In paragraph 39 of the FAC, CRE avers: "[n]otice of claim was given under the UAPA by, on behalf of, and/or in conjunction with each of the Plaintiffs for RGI's breach of representations and warranties in accordance with UAPA § 8.1."[90]  Again, in paragraph 61, CRE states "[a]ll conditions precedent to Plaintiffs['] recovery and relief have been performed or have occurred."[91]  Further, in paragraphs 74 and 75 of

---

[87]  Pls.' Opp'n Br. at 10-11.

[88]  *Ladenburg Thalmann Fin. Servs., Inc., v. Ameriprise Fin., Inc.*, 2017 WL 685577, at \*4 (Del. Super. Ct. Jan. 30, 2017) (quoting *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at \*6 (Del. Ch. Jan. 24, 2005)).

[89]  *Id*. (internal quotation marks omitted).

[90]  First Am. Compl. ¶ 39.

[91]  *Id*. ¶ 61.

the FAC, CRE pleads: "[p]rior to initiating this instant action, Plaintiffs have complied with all applicable provisions of the UAPA. Plaintiffs satisfied all conditions precedent contained in the UAPA prior to initiating this litigation."[92]

For now, at this pleading stage, the FAC satisfies the minimal pleading standards imposed on a plaintiff.[93] Whether CRE's assertions as to notice are supportable by sufficient evidence will be later determined post-discovery.[94]

**2. The contractual limitations period is ambiguous as to the fraudulent inducement claim.**

In addition to adequately pleading notice in the FAC, CRE's fraud claim also survives UAPA § 8.1's contractual limitations period because that limitations period is ambiguous as to the fraudulent inducement claim. In the UAPA's exclusivity provision, Section 8.7 states:

> Except with respect to claims brought by a Party to the extent that any such claim arises from willful misconduct, fraud or intentional misrepresentation on the part of any other Party with respect the Transactions . . . the rights of the Indemnitees under ARTICLE VII and this ARTICLE VIII shall be the sole and exclusive remedies of the Indemnitees with respect to claims

---

[92] *Id.* ¶¶ 74, 75.

[93] *Ladenburg Thalmann Fin. Servs., Inc.*, 2017 WL 685577, at *5; *see also 3M Co. v. Neology, Inc.*, 2019 WL 2714832, at *8 (Del. Super. Ct. June 28, 2019) (finding that under Delaware's pleading standard, defendant's counterclaim allegation that "3M had notice of Neology's claims against 3M" sufficiently pled that defendant's claims were timely).

[94] *Ladenburg Thalmann Fin. Servs., Inc.*, 2017 WL 685577, at *5.

under, or otherwise relating to the transactions that are the subject of, this Agreement.[95]

"In deciding a motion under Rule 12, the Court cannot choose between two differing reasonable interpretations of a contract. Rather, dismissal is proper only if the defendant's interpretation is the *only* reasonable construction as a matter of law."[96] This provision puts into question whether the parties intended to carve out claims for willful misconduct, fraud, or intentional misrepresentation. "Faced with a question of contract interpretation on a motion to dismiss, [the Court] must determine whether the contractual language at issue is unambiguous. If so, [the Court] must give effect to its meaning. If, however, the contractual language is reasonably or fairly susceptible to different interpretations, [the Court] must resolve the ambiguity in favor of the non-moving party."[97] A reasonable read of the exclusivity provision does lend two different interpretations as to the scope of the contractual limitations period. And such ambiguity inures to CRE's benefit at this point in the litigation.[98]

---

[95] First Am. Compl., Ex. A § 8.7 (UAPA).

[96] *Novipax Hldgs. LLC v. Sealed Air Corp.*, 2017 WL 5713307, at *9 (Del. Super. Ct. Nov. 28, 2017).

[97] *Eni Hldgs., LLC v. KBR Group Hldgs., LLC*, 2013 WL 6186326, at *6 (Del. Ch. Nov. 27, 2013) (internal quotation marks and citations omitted).

[98] *Novipax Hldgs. LLC*, 2017 WL 5713307 at *9.

As a result, CRE's fraudulent inducement claim (Count I) and breach-of-contract claim (Count II) both survive RGI's timeliness arguments.

## C. CRE adequately pleads a claim for fraudulent inducement.

Delaware law requires a heightened pleading standard for fraud and misrepresentation claims—each such claim must be pled with particularity.[99] Generally, to state a claim for fraud, one must allege: (1) a false representation of fact; (2) defendant's knowledge or belief that the representation was false or made with reckless indifference to the truth; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance upon that representation; and (5) damages resulting from such reliance.[100] Despite these particularity requirements, Rule 9(b) provides that "malice, intent, knowledge and other condition of mind of a person may be averred generally."[101]

As RGI put it, CRE fails to shoulder the Rule 9(b) pleading burden because CRE has failed to plead material misrepresentation, justifiable reliance, and knowledge or intent.[102] But CRE hasn't.

---

[99] *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *3 (Del. Super. Ct. Mar. 13, 2017).

[100] *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *9 (Del. Super. Ct. Aug. 7, 2019) (citing *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008)).

[101] Del. Super. Civ. R. 9(b).

[102] Def.'s Mot. to Dismiss at 19-20, 23-25, 26-28.

CRE's FAC alleges that in Section 4.11 of the UAPA, "RGI represented and warranted that since December 31, 2016, there had been no changes in certain aspects of the business."[103] According to CRE, this representation was false and intended to induce it to execute the UAPA.[104] The FAC more than covers that required by Rule 9(b). One reading the FAC is told:

- RGI made the representations to induce CRE Niagara to execute the UAPA, and CRE Niagara relied on the representations contained in Section 4.11 in deciding to execute the UAPA on May 19, 2017, and to close the transaction on that date, which included acquiring CRE Bushkill, a party to the Servicing Agreement and the Participation Agreement which had been previously executed on May 18, 2017.[105]

- Following Closing, it became clear that RGI had made misrepresentations. For example, Plaintiffs learned that prior to Closing, RGI had begun selling timeshare interests to persons who were not as creditworthy as the pool of past buyers. This practice benefitted RGI in at least two ways: first, it propped up sales so as to induce Plaintiffs to enter into and close the transaction and second, it added volume to the pool of receivables that Servicer now had an obligation to collect. And because RGI was successful in separating itself from the actual cost of collection, it created nothing but upside for RGI, while creating larger collection costs to Servicer. This practice is directly contrary to RGI's representations, including the representations and warranties contained in Section 4.11 of the UAPA and, as previously noted, made it substantially more

[103] First Am. Compl. ¶ 63.

[104] *Id*. ¶¶ 64-66.

[105] *Id*. ¶ 21.

difficult for CRE Bushkill to collect the monthly amounts set forth on Schedule 2 of the Servicing Agreement.[106]

- RGI sought to take advantage of its misdeeds by declaring a Servicer Resort Default under the Servicing Agreement, a "situation which resulted from the uncreditworthy sales.["][107]

- At the time the representations contained in Section 4.11 were made on May 19, 2017, and at Closing, they were false. Specifically, the representations were materially false because RGI had embarked on a practice of selling timeshare interests to persons who were not as creditworthy as the pool of past buyers. This practice constituted a change in RGI's credit practices and policies that was never disclosed to Plaintiffs.[108]

- At the time the representations contained in Section 4.11 were made and at Closing, RGI either knew they were false or made such representations with reckless indifference to their truth or falsity.[109]

- The false representations contained in UAPA Section 4.11 were intended to induce Plaintiffs to execute the UAPA on May 19, 2017, to agree to make payments to RGI, and to agree to the other agreements contemplated thereby. The false representations in Section 4.11 were also intended to induce Plaintiffs to close the transaction, make payments and to undertake obligations, including those in the Servicing Agreement. Plaintiffs justifiably relied on the false representations contained in Section 4.11 when deciding to execute the UAPA and related documents and when deciding to eventually close the transaction.[110]

---

[106] *Id.* ¶ 28.

[107] *Id.* ¶ 29.

[108] *Id.* ¶ 64.

[109] *Id.* ¶ 65.

[110] *Id.* ¶¶ 66-68.

- As a direct and proximate result of RGI's fraudulent representations contained in UAPA Section 4.11, Plaintiffs were fraudulently induced into executing the UAPA and related documents, closing the transaction, making payments, and undertaking their contract-imposed obligations.[111]

- As a direct and proximate result of RGI's fraudulent conduct, Plaintiffs were damaged. In turn, Plaintiffs are entitled to rescissory damages, attorneys' fees, costs, and punitive damages as a result of having been fraudulently induced to enter into the UAPA and ultimately acquire certain timeshare resorts located in Pennsylvania and to undertake certain obligations.[112]

Looking at the FAC as a whole, CRE has alleged "the circumstances of the fraud with detail sufficient to apprise [RGI] of the basis for the claim."[113] That is, CRE has satisfied Rule 9(b)'s heightened pleading standard. And so, Count I of CRE's FAC survives.

## V. CONCLUSION

The UAPA's forum selection clause applies to this action. And under that clause, the parties have waived any objection to an inconvenient forum. So RGI's improper venue and *forum non conveniens* arguments necessarily fail.

---

[111] *Id.* ¶ 69.

[112] *Id.* ¶ 71.

[113] *EZLinks Golf*, 2017 WL 1312209, at *3 (internal quotation marks and citation omitted).

Because the contractual limitations period is ambiguous as to potential fraud claims and because CRE has properly pled compliance with UAPA's Direct Claim notice provision, RGI's timeliness arguments also fail.

Lastly, as the Court has found that CRE's fraudulent inducement claim meets Rule 9(b)'s heightened pleading standard, RGI's pleading argument fails as well.

Taking account of all this, RGI's Motion to Dismiss is **DENIED** in whole.

**IT IS SO ORDERED.**

<br>

_____
Paul R. Wallace, Judge