**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CHENMOU WU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-07-045 EMD |
| | ) | |
| DELAWARE TECHNICAL | ) | |
| COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## I.     INTRODUCTION

This is a civil action involving fraud and negligence.  Initially, Plaintiff Chenmou Wu alleged that Defendant Delaware Technical Community College ("DTCC") fraudulently induced Mr. Wu to send $9,650 to a third party for an employment opportunity.[1]  Mr. Wu contends that the emails came from a source purportedly associated with DTCC.  On October 4, 2021, DTCC filed a motion to dismiss Mr. Wu's Complaint.[2]  On January 13, 2022, the Court granted DTCC's first motion to dismiss and gave Mr. Wu leave to amend his complaint.[3]

Mr. Wu filed an amended complaint on February 10, 2022 (the "Amended Complaint").[4]  In the Amended Complaint, Mr. Wu now contends that DTCC negligently and fraudulent induced him to pay $9,650 to a third party for an employment opportunity.  Mr. Wu contends that he has been damaged in the amount of $199,650.00 due to "massive mental, psychological

---

[1] D.I. No. 1. Complaint (hereinafter, "Compl.") at 2.
[2] D.I. No. 9. Defendant's Motion to Dismiss or in the Alternative Motion for a More Definite Statement (hereinafter, "DTCC's First Mot.").
[3] D.I. No. 16. Order (i) Granting Defendant's Motion to Dismiss or in the Alternative Motion for a More Definite Statement and (ii) Providing Leave to Amend (hereinafter, "Order").
[4] D.I. No. 17. Amended Complaint and Plaintiff's Rebuttal Evidence to Defendant (hereinafter, "Am. Compl.").

and financial harm."[5]  On February 24, 2022, DTCC filed Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion").[6]  Mr. Wu opposed the Motion and filed his Plaintiff's Motion of Hearing at the Court and Response Defendant's Unreasonable Motions (the "Response") on March 15, 2022.[7]

On July 21, 2022, the Court held a hearing on the Motion and the Response.[8]  The Court then took the Motion under advisement.  The Court did not ask the parties to submit any additional papers or pleadings.  On August 2, 2022, Mr. Wu chose to file his Plaintiff's Additional Evidence, Statements and Conclusion to Against Defendant About the Hearing (the "Supplement").[9]

The Court has considered the Motion, the Response, the Complaint, the Amended Complaint, the arguments made in support of the Motion and the Response, and the Supplement. For the reasons set forth below, the Court shall **GRANT** the Motion.

## II.    RELEVANT FACTS[10]

Mr. Wu has been a registered student at DTCC since the spring of 2019.[11]

On December 17, 2020, Mr. Wu received an email from dfears1@dtcc.edu (the "Fears Email").[12]  The Fears Email reads as follows:

> From: Dyamond Fears <dfears1@dtcc.com
> Sent: Thursday, December 17, 2020 5:43 PM
> Subject: PT Personal/Administrative Assistant !!!

---

[5] D.I. No. 20.  Plaintiff's Motion of Hearing at the Court and Response Defendant's Unreasonable Motions (the "Response").
[6] D.I. No. 18. Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "DTCC's Mot.").
[7] D.I. No. 20.
[8] D.I. No. 24.
[9] D.I. No. 25.
[10] Mr. Wu is acting *pro se*.  Mr. Wu did not formally "amend" the Complaint.  Instead, Mr. Wu adds facts and clarifies points in the Amended Complaint.  Am. Compl. at 2.  Accordingly, the Court will use both the Complaint and the Amended Complaint as if the Complaint is incorporated by reference into the Amended Complaint when addressing the issues raised in the Motion.
[11] Compl. at 2.
[12] DTCC's Mot. ¶ 1.

Good Day,

I have an offer for the post of personal assistant which can be done part or full time which pays $450 weekly.
To know more about the position apply below.

Click Here

Application will be received and you will get a response between 24-4 hours.

Job Placement & Student Services
Delaware Technical Community College
Copyright _2020 Chippewa Valley Technical College .All rights reserved[13]

Mr. Wu alleges that Dyamond Fears claimed to be looking for a PT Personal/Administrative Assistant position.[14] Mr. Wu did not communicate with Mr. Fears but, instead, Mr. Wu proceeded to communicate with kennethjones040214@gmail.com.[15] Mr. Wu provided the addressee with his bank account information.[16]

On January 6, 2021, Timothy Winstead, the Director of Public Safety for DTCC, alerted Mr. Wu of potential fraud associated with the Fears Email.[17] By this time, Mr. Wu had given $9,650 to kennethjones040214@gmail.com.[18] On January 15, 2021, Gail Charrier communicated with Mr. Wu and advised Mr. Wu that he may have been a victim of fraud/phishing."[19] On March 8, 2021, DTCC's general counsel, Brian D. Shirey, emailed Mr. Wu explaining that DTCC was not associated with either email address and that the matter was

---

[13] Am. Compl., Ex. at 6.
[14] *Id.*, ¶ 4.
[15] *Id.*
[16] *Id.*
[17] Am. Compl. ¶ 1.
[18] Compl. at 2.
[19] Am. Compl., Ex. at 5.

3

now closed.[20] Mr. Shirey provided that the Fears Email was the result of a "hack" occurring on December 17, 2020 at 5:43 p.m. and that

> Within 10 minutes, the email account in question was identified as having been compromised and deactivated at 5:53 p.m. You did not receive responses to the subsequent emails you sent to that account, including the one you sent later that evening at 7:46 p.m., because the account had already been deactivated.[21]

Mr. Wu filed the Complaint on July 12, 2021, seeking damages from DTCC for Mr. Wu's participation in a fraudulent email scheme originating from dfears1@dtcc.edu.[22] DTCC filed a Motion to Dismiss or in the Alternative Motion for a More Definite Statement (the "Original Motion") on October 4, 2021.[23] Mr. Wu submitted his Plaintiff's Response to Defendant's Motion to Dismiss or in the Alternative Motion for a More Definite Statement (the "Original Response") on October 15, 2021.[24] The Court reviewed the complaint, the Original Motion and the Original Response. After that review, the Court entered an Order granting the Original Motion but gave Mr. Wu leave to amend his complaint.[25]

Mr. Wu filed the Amended Complaint on February 10, 2022. DTCC filed the Motion on February 24. 2022. Mr. Wu then filed the Response and, subsequently, the Supplement.

### III.    PARTIES CONTENTIONS

#### A. DTCC

DTCC argues that Mr. Wu failed to allege a *prima facie* claim of fraud. Specifically, DTCC states that Mr. Wu only made general and conclusory statements and failed to produce any evidence of false representations or negligence as required by Rule 9(b).[26] Further, DTCC

---

[20] *Id.*, Ex. at 9; see also D.I. No. 15. Plaintiff's Response to Defendant's Motion to Dismiss or in the Alternative Motion for a More Definite Statement (the "Original Response") ¶ 21.
[21] Am. Compl., Ex. at 9.
[22] D.I. No. 1.
[23] D.I. No. 9.
[24] D.I. No. 15.
[25] D.I. No. 16.
[26] DTCC's Mot. ¶ 15.

4

argues that Mr. Wu has not established what duty Timothy Winstead owed to Mr. Wu to establish a negligence claim.

DTCC asks the Court to dismiss the Amended Complaint with prejudice and grant any further relief the Court deems necessary.

### B. Mr. Wu

In the Amended Complaint, Mr. Wu argues DTCC committed fraud when an unknown third party used an email address that appeared to be associated with DTCC in an email phishing scheme. Mr. Wu asserts that Mr. Winstead was negligent in his duty. In addition, Mr. Wu contends that DTCC has an inadequate email management system[27] and "tried to cover up and distort the facts."[28]

In the Response, Mr. Wu provides that the Motion "made unreasonable excuses, ignored the facts, and made false statements."[29] Further, Mr. Wu contends he has now suffered "massive mental, psychological and financial harm" and has increased the original claim amount to $199,650.[30]

## IV.    STANDARD OF REVIEW

Under Delaware law, a party may move to dismiss under this Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[31] In considering a Rule 12(b)(6) motion, the Court (i) accepts as true all well-pleaded factual allegations in the complaint; (ii) credits vague allegations if they give the opposing party notice of the claim; (iii) draws all reasonable factual inferences in favor of the non-moving party; and (iv) denies dismissal if

---

[27] Response ¶ 3.
[28] Am. Compl. ¶ 2.
[29] Response at 2.
[30] *Id.*
[31] Del. Super. Civ. R. 12(b)(6).

5

recovery on the claim is reasonably conceivable.[32] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[33] Delaware's pleading standard is "minimal."[34] Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[35]

In general, a claim's reasonable conceivability cannot be determined through "matters outside the pleadings."[36] But, "for carefully limited purposes,"[37] the Court may consider "matters outside the pleadings when the document is integral to . . . a claim and incorporated into the complaint."[38] "[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[39]

The pleading standard is governed by Civil Rule 9. Civil Rule 9(b) requires that "[i]n all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity."[40] However, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."[41] In order to plead with particularity a party must include the "time, place, contents of the alleged fraud or negligence, as well as the individual accused of committing fraud."[42]

---

[32] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[33] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[34] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[35] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. 2021) (internal quotation marks omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility . . . .'").

[36] *Windsor I, LLC v. CWCapital Asset Mgmt LLC*, 238 A.3d 863, 872-75 (Del. 2020); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68 (Del. 1995).

[37] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 69.

[38] *Windsor I, LLC*, 238 A.3d at 873 (internal quotation marks omitted).

[39] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[40] Del. Super. Ct. Civ. R. 9(b).

[41] *Id.*

[42] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *6 (Del. Super. Sept. 25, 2015) (quoting *Universal Capital Mgmt., v. Micco World, Inc.*, 2012 WL 1413598, at *2 (Del. Super. Feb. 1, 2012)).

# V.    DISCUSSION

## A.  PLAINTIFF DOES NOT IDENTIFY WHAT FRAUD DTCC HAS COMMITTED

To state a claim of fraud in Delaware a Plaintiff must allege:

> 1) a false representation, usually one of fact…; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.[43]

To establish a claim for fraud, "a plaintiff must have acted in justifiable reliance on the representation."[44]

Mr. Wu admits that he is unsure who committed the fraud but that the perpetrator used an email associated with DTCC.[45]  The email address, dfears1@dtcc.edu, was used to send fake job posting information to Mr. Wu.[46]  The Amended Complaint's Exhibit shows that the fraudulent activity was conducted by someone using the kennethjones040214@gmail.com email address.[47]  The email of Kenneth Jones is not one associated with DTCC and Mr. Wu does not contend that Mr. Jones is associated with DTCC.

The Amended Complaint attempts to assert a fraud claim against DTCC by arguing that the email phishing incident, i.e., the Fears Email, was a "gross dereliction of duty" on the part of DTCC.[48]  While Mr. Wu may allege a claim for fraud against dfears1@dtcc.edu and kennethjones040214@gmail.com, the Court holds that Mr. Wu fails to assert an actionable fraud claim against DTCC.

---

[43] *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008).
[44] *ITW Global Investments Inc. v. American Industrial Partners Cap. Fund IV, L.P.*, 2015 WL 3970908, at *8 (Del. Super. June. 24, 2015).
[45] Am. Compl. ¶ 4.
[46] *Id.*
[47] DTCC's Mot. ¶ 13.
[48] Response ¶ 4.

**B. MR. WU FAILS TO IDENTIFY A PERSON OR PERSONS AT DTCC THAT MADE A FALSE REPRESENTATION OF FACT**

Mr. Wu identifies two persons at DTCC in the Amended Complaint: Mr. Winstead and Mr. Shirey. The Court, drawing all reasonable factual inferences in favor of Mr. Wu, finds that these communications do not constitute false representations of fact that were intended induce Mr. Wu to act.

Mr. Wu states that Mr. Winstead was the first person to notify Mr. Wu of the fraudulent scheme involving dfears1@dtcc.com.[49] Mr. Wu argues Mr. Winstead neglected his duty.[50] However, once Mr. Winstead was made aware of the fraud he alerted Mr. Wu that he may have been a victim of an internet phishing scheme.[51] It appears that Mr. Wu believes Mr. Winstead should have been aware of the fraud earlier and that is what makes DTCC liable for fraud. To support this, Mr. Wu argues there are severe loopholes in DTCC's management.[52] However, Mr. Wu makes only conclusory statements and fails to identify what are the "loopholes" in DTCC's management. The Court assumes that Mr. Wu uses the term "loopholes" to mean that the DTCC system should have anticipated potential frauds by third parties and taken prevention steps.

As pled and argued, Mr. Winstead is, at most, a messenger of facts and not someone who made any material misrepresentations to Mr. Wu. Moreover, Mr. Wu cannot demonstrate that anything Mr. Winstead communicated to Mr. Wu (i) was false or (ii) induced Mr. Wu to provide money to kennethjones040214@gmail.com. Whether DTCC should have set up a system that anticipated third party fraud goes to a negligence claim, if any. Fraud is an intentional tort and not one of negligence.

---

[49] Am. Compl. ¶ 1.
[50] *Id.*
[51] DTCC's Mot. ¶ 5.
[52] *Id.* ¶ 2

Mr. Wu also identifies Mr. Shirey, as evidence of DTCC's involvement in the fraud. Mr. Wu contends that Mr. Shirey admitted that dfears1@dtcc.edu was from the DTCC's system.[53] That may be true but even an admission that the dfears1@dtcc.edu address was from the system does not mean that Mr. Shirey made a material misrepresentation of a material fact constituting fraud. Mr. Shirey communicated with Mr. Wu after Mr. Wu was defrauded. Mr. Shirey communicated that the Fears Email was the result of a hacked account and that the account had been deactivated. These statements are not false representations of fact made to induce Mr. Wu to provide money to kennethjones040214@gmail.com

Mr. Wu admits that he does not know who sent the email. The initial email received from dfears1@dtcc.edu contained information related to Chippewa Valley Technical College, which is not associated with DTCC.[54] The email address differs in form from other DTCC email addresses. The Fears Email contains typos and poor grammar. Mr. Wu should have suspected that the email was not from DTCC.[55] Further, Mr. Wu argues he verified the job information three times during the twenty-day period in question.[56] However, no one associated with DTCC verified the email as a legitimate job posting. To the contrary, everyone associated with DTCC informed Mr. Wu this email was most likely a part of an email phishing scheme.[57]

In the Response, Mr. Wu attempts to clarify some of his statements regarding DTCC's fraudulent action. Despite these attempts, the facts Mr. Wu adds in the Response are not present in the Amended Complaint and as such cannot be considered. The pleading standard for evaluating a Rule 12(b)(6) motion requires the Court to only consider facts alleged in the

---

[53] *Id.* ¶ 3.
[54] DTCC's Mot. ¶ 13.
[55] *Id.*
[56] Am. Compl. ¶ 3.
[57] DTCC's First Mot. ¶ 7-8.

complaint.[58]  Further, even if the facts from the Response were in the Amended Complaint, they do not link DTCC, Mr. Wintead, or Mr. Shirey to any material misrepresentation.  As such, even if the Court were to consider the additional facts, the Amended Complaint still fails to satisfy the requirements of Rule 9(b).

### C. PLAINTIFF FAILS TO PLEAD JUSTIFIABLE RELIANCE

To demonstrate justifiable reliance "the misrepresentation forming the basis for the fraud or negligent misrepresentation claim must be material, and the plaintiff generally cannot rely, for example, on puffery, expressions of mere opinion, or representations that are obviously false."[59]  Mr. Wu argues that if he had received a warning from DTCC, then he would not have fallen into the email phishing scheme.[60]  Mr. Wu contends that his attempts to verify the job with DTCC and the delayed response from DTCC act as his justifiable reliance.  However, this evidence appears to point to the fact that Mr. Wu should have been aware of the clearly false representations made by the dtcc.edu email.  Instead of waiting for confirmation from DTCC, Mr. Wu moved forward with transferring money dfears1@dtcc.edu but sent to another email address.[61]  Further, the Fears Email came from a DTCC email but contained "copyright" information to Chippewa Valley Technical College.[62]

Under these facts, the Court cannot find justifiable reliance.  Mr. Wu seems to be unsure of the situation and asks for confirmation from DTCC.  DTCC did not act before Mr. Wu purchase the gift cards.  Without verification, Mr. Wu cannot contend that he "justifiably" relied on DTCC for anything.  Mr. Wu had suspicions but acted without further information.  DTCC

---

[58] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020).
[59] *Vichi v. Koninklijke Philips Elecs.*, 85 A.3d 725, 776 (Del. Ch. 2014) (internal citations omitted).
[60] Am. Compl. ¶ 3.
[61] Compl. ¶ 4.
[62] DTCC's Mot. ¶ 4.

did not respond in the timeframe that Mr. Wu wanted but that does not create justifiable reliance in a situation where suspicions have been aroused. The scenario is just too illogical to create justifiable reliance.

### D. PLAINTIFF DOES NOT IDENTIFY WHAT DUTY DEFENDANT POSSESSES IN RELATION TO PLAINTIFF TO ESTABLISH A CLAIM FOR NEGLIGENCE

A negligence claim requires there to be a legally defined duty.[63] Generally, Delaware follows the Restatement (Second) of Torts to determine whether one party owed another a duty of care.[64] Negligence is defined as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm."[65] However, "one who merely omits to act" generally has no duty to act unless there is a special relationship between the parties.[66] Delaware does not require a university to protect its adult students based merely on the university-student relationship.[67] "The university is not an insurer of the safety of its students nor a policeman of student morality, nonetheless, it has a duty to regulate and supervise foreseeable dangerous activities occurring on its property."[68] To overcome this general principle, a party must show that (i) a special relationship existed between the student and the university or (ii) the university assumed a duty of care.[69]

Mr. Wu is a student at DTCC. However, Delaware does not recognize a general duty of care owed by a university protect its adult students based purely on the student-university

---

[63] *Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 7 (Del. 2013).
[64] *Id.*
[65] *Id.* (quoting Restatement (Second) of Torts § 282).
[66] *Id.* (quoting Restatement (Second) of Torts § 302 cmt. (a)).
[67] *Id.*
[68] *Furek v. University of Delaware*, 594 A.2d 506, 522 (Del. 1991).
[69] *Rogers,* 73 A.3d at 7-11.

11

relationship.[70] As such, Mr. Wu must demonstrate that DTCC either undertook a duty to protect Mr. Wu or stood in a special relationship with Mr. Wu.[71]

Mr. Wu fails to offer any facts demonstrating that a special relationship existed between Mr. Wu and DTCC. The Court has found no law that suggests that DTCC stood *in loco parentis* to Mr. Wu. Mr. Wu admits that "Tim Winstead and DTCC, are not the swindler" but claims they are "liable for their negligence."[72] Mr. Wu contends that because Mr. Winstead notified him after Mr. Wu had already closed his Bank of America checking account, Mr. Winstead neglected his duty.[73] In addition, Mr. Wu argues that DTCC failed to have proper email protocols that could have prevented the phishing scheme—*e.g.*, DTCC's failure to "admit severe loopholes in their managements" and DTCC's attempt to "cover up and distort the facts" has contributed to the negligence claim.[74] The Court does not find that these facts give rise to a claim against DTCC for injuries caused to Mr. Wu out of a failure to properly supervise.

Mr. Wu contends that if he had received a warning from DTCC then he would not have been deceived by the phishing scheme. Mr. Wu also claims that DTCC noticed the fraud incident and did not take action to notify or protect the students and faculty of DTCC.[75] In essence, Mr. Wu argues that DTCC had a duty to act and failed to undertake that duty. These arguments presume that DTCC expressly undertook a duty to protect students from phishing scams. The record does not support a conclusion that DTCC voluntarily (or involuntarily) assumed such a duty. Mr. Winstead did notify Mr. Wu that he was concerned Mr. Wu had fallen victim to an email phishing scheme.[76] Mr. Winstead's actions are post-event actions and do not

---

[70] *Id.* at 11 (quoting *Furek*, 594 A.2d at 519).
[71] Id. at 7.
[72] Am. Compl. ¶ 4.
[73] *Id.* ¶ 1.
[74] *Id.* ¶ 2.
[75] *Id.* ¶ 3.
[76] DTCC's Mot. ¶ 8.

12

support the argument that DTCC voluntarily assumed a duty of care to act to protect Mr. Wu from being contacted by third-parties intent on using the internet to commit fraud on students. This is also true with Ms. Charrier and Mr. Shirey.

Mr. Wu is the unfortunate victim of an email scam. The perpetrator of that fraud is unknown to the Court and the parties. This person is liable to Mr. Wu. Under Delaware law and the facts, however, Mr. Wu fails to state claims for fraud or negligence that would extend the liability of this third person to DTCC.

## VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion. The Amended Complaint is dismissed, with prejudice, for failing to state actionable claims for (i) fraud or (ii) negligence.

Dated: October 20, 2022
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeXpress
       Chenmou Wu (by mail)